532 A.2d 1186

COMMONWEALTH of Pennsylvania, Appellee,

v.

**David C. MILLER, Appellant.**

Superior Court of Pennsylvania.

Argued June 11, 1987.

Filed Oct. 20, 1987.

360

William Miele, Assistant Public Defender, Williamsport, for appellant.

Kenneth Osokow, Assistant District Attorney, Williamsport, for Com., appellee.

Before CIRILLO, President Judge, and OLSZEWSKI and HESTER, JJ.

OLSZEWSKI, Judge:

Appellant, David C. Miller, appeals from the judgment of sentence entered in the Court of Common Pleas of Lycoming County following his conviction by a jury of driving under the influence of alcohol (DUI), resisting arrest, and a summary traffic offense. On appeal, appellant contends that the trial court erred in admitting into evidence: (1) results of a field sobriety test known as the "horizontal gaze nystagmus" (HGN) test; and (2) appellant's prior convictions for burglary, theft, and receiving stolen property. For the reasons stated below, we affirm the trial court's judgment of sentence.

Before addressing the merits of appellant's contentions, a brief recital of the relevant facts is necessary. The Honorable Clinton W. Smith's trial court opinion of December 31, 1986 aptly stated:

In the early morning hours of November 27, 1985, Officers Bruno and Duck, of the Williamsport Bureau of Police, investigated a hit and run accident that occurred in the area of Krouse Avenue and Park Avenue. Upon arriving at the scene of the accident, the officers discovered that a black El Camino vehicle had struck a row of hedges bordering a sidewalk and that it had knocked over a "No Parking" sign. At approximately 2:45 a.m. the officers spotted a vehicle matching the description given by a witness at the scene of the accident, and they proceeded to follow the vehicle operated by defendant [appellant]. After following the vehicle a short distance the officers decided to stop the vehicle; the emergency lights on the cruiser were activated, and the police continued to follow the vehicle. Defendant, however, did not pull over, but rather, led the officers on a chase for several blocks. The officers radioed that they were in pursuit, and eventually the defendant pulled over to the curb, exited the car and ran north on Stevens Street and

then east on Scott Street. Officer Bruno followed the defendant and found him on the back porch of his residence located at 1553 Scott Street. Officer Bruno approached the defendant, told him not to move and informed him that he was wanted for hit and run and that he was suspected of driving under the influence. Officer Bruno testified that defendant had been driving in an erratic manner in that he went over the curb at one point, that he was driving at an excessive speed and that he went through a stop sign before exiting his vehicle. Officer Bruno also observed that the defendant had bloodshot eyes, that his balance was slightly off, that his speech was slurred and that he smelled of alcohol.

While attempting to place handcuffs on defendant, the defendant engaged Officer Bruno, as well as three fellow officers, in a struggle. Defendant was eventually subdued and upon refusing to submit to blood tests, he was taken to City Hall where he performed sobriety tests. Officer Bruno testified that defendant failed to perform the test[s] correctly and thus, based upon the officer's observation, together with the results of the above tests, defendant was charged with driving under the influence in violation of 75 Pa.C.S. § 3731(a)(1).

Trial court opinion of December 31, 1986, at pp. 1–3.

Prior to trial, appellant's counsel filed a motion *in limine* with the trial court to exclude testimony regarding the HGN test and evidence of appellant's prior criminal convictions. The trial court denied appellant's motion and, after a two-day trial, a jury convicted appellant of driving under the influence, resisting arrest, and a summary traffic offense. The trial court subsequently sentenced appellant to an aggregate term of imprisonment of fourteen to forty-eight months. Following denial of his post-trial motions, appellant filed this timely appeal.

Appellant first contends that the trial court erred in admitting into evidence results of the HGN test. Appellant's brief succinctly summarizes his position regarding

why admission of the HGN test results was error in this case:

> Case law prohibits evidence based on scientific principles without a showing that the principle is generally accepted by experts in the field to which the principle belongs. The horizontal gaze nystagmus (HGN) test represents the principle that alcohol consumption exagerates [sic] and magnifies involuntary eye twitchings. At trial there was no showing as to this principle[']s acceptance by experts in the field. Furthermore, the officer testifying, as to the HGN test, lacked expertize [sic] to either testimony concerning the test and its results as to defendant, and to its acceptance by experts in its field.

Appellant's brief at p. 6. We agree with appellant's contention that the trial court improperly admitted into evidence results of the HGN test, but we also find that the trial court's error was harmless since other sufficient evidence was admitted at trial to sustain the jury's verdict.

■ The trial court permitted testimony regarding the HGN test on the basis that the HGN test "is a scientific test to the extent that it is based on scientific principles, just as are other sobriety tests performed by the police. However, the [trial] court [did] not deem the test to be of such a type that demands expert testimony prior to its introduction." Trial court opinion of December 31, 1986, at p. 3. We disagree with the trial court's conclusion that prior to admitting HGN test results into evidence expert testimony was not required to establish an adequate foundation regarding its admissibility.

Scientific evidence is "evidence that draws its convincing force from some principle of science, mathematics and the like." *State v. Reed,* 83 Or.App. 451, 732 P.2d 66, 68 (1987) (quoting *State v. Brown,* 297 Or. 404, 407, 687 P.2d 751, 754 (1984)). In Pennsylvania, "[t]he admissibility of any experimental or scientific evidence depends upon presenting an adequate foundation." *Commonwealth v. McGinnis,* 511 Pa. 520, 524, 515 A.2d 847, 849 (1986). In discussing what

constitutes an adequate foundation for admission of scientific evidence, our Supreme Court stated:

> Admissibility of the evidence depends upon the *general* acceptance of its validity by those scientists active in the field to which the evidence belongs
>
>> "Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, *the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.*" *Frye v. United States,* 54 App.D.C. 46, 293 F. 1013, 1014 (1923) (emphasis supplied).

*Commonwealth v. Topa,* 471 Pa. 223, 231, 369 A.2d 1277, 1281 (1977). Our Supreme Court has additionally noted that "[o]ne proffered rationale for this standard is 'fear that the trier of fact will accord uncritical and absolute reliability to a scientific device without consideration of its flaws in ascertaining veracity.'" *Commonwealth v. Nazarovitch,* 496 Pa. 97, 101–102, 436 A.2d 170, 172–173 (1981) (quoting Spector and Foster, "Admissibility of Hypnotic Statements: Is the Law of Evidence Susceptible?", 38 Ohio L.J. 567, 583 (1977)).

Nystagmus is the rhythmic oscillation of the eyeballs in either a horizontal, vertical, or rotary direction. *See Stedman's Medical Dictionary* 971 (5th Lawyer's Ed.1982); *Webster's New Collegiate Dictionary* 783 (1980). Medical literature distinguishes between several types of nystagmus, as well as the their underlying causes. *See e.g., The Merck Manual of Diagnosis and Therapy* 1980–1981 (14th Ed.1982). Jerk Nystagmus is described as follows:

> Jerk nystagmus ... is characterized by a slow drift, usually away from the direction of gaze, followed by a quick jerk of recovery in the direction of gaze. A motor

disorder, *it may be congenital or due to a variety of conditions affecting the brain, including ingestion of drugs such as alcohol* and barbiturates, palsy of lateral or vertical gaze, disorders of the vestibular apparatus and brainstem and cerebellar dysfunction.

*Id.* at 1980 (emphasis added).

The HGN test is often employed by police officers to ascertain the horizontal gaze nystagmus of a motor vehicle driver suspected of driving under the influence of alcohol. In *State v. Superior Court*, 149 Ariz. 269, 718 P.2d 171 (1986), the Supreme Court of Arizona described how the test is administered:

In the HGN test the driver is asked to cover one eye and focus the other on an object (usually a pen) held by the officer at the driver's eye level. As the officer moves the object gradually out of the driver's field of vision toward his ear, he watches the driver's eyeball to detect involuntary jerking. The test is repeated with the other eye. By observing (1) the inability of each eye to track movement smoothly, (2) pronounced nystagmus at maximum deviation and (3) onset of the nystagmus at an angle less than 45 degrees in relation to the center point, the officer can estimate whether the driver's blood alcohol content (BAC) exceeds the legal limit of .10 percent.

*Id.* at 271, 718 P.2d at 173. As described in both Officer Duck's testimony, *see infra,* and the trial court opinion at p. 4, the rationale for subjecting motorists suspected of driving under the influence of alcohol to the HGN test derives from the scientific principle that consumption of alcohol causes nystagmus.

Results of the HGN test are therefore scientific evidence based on the scientific principle that consumption of alcohol causes the type of nystagmus measured by the HGN test. Furthermore, in order for HGN test results to be admissible, the party seeking to admit the results as evidence must establish that the scientific principles upon which the test is based are generally accepted by scientists

active in the appropriate scientific communities.[1] *See Topa,* 471 Pa. at 230, 369 A.2d at 1281. In the instant case, the Commonwealth did not present expert testimony regarding general acceptance of the scientific principle (i.e., consumption of alcohol causes nystagmus) upon which the HGN test is based. Rather, the only testimony concerning the validity of the HGN test came from Officer Arnold Duck, Jr., whose only specialized training in this area was a two day course on the proper use of the HGN test and other field sobriety tests.[2] We find that this was an inadequate foun-

1. We do not reach the question of what scientific disciplines would constitute the scientific community in which general acceptance of the scientific principles underlying the HGN test would have to be established at trial prior to admission of the results of an HGN test. This question has not been raised either in the trial court or in this appeal and, consequently, we do not consider it. We, however, do note that the Arizona Supreme Court addressed this question in *State v. Superior Court,* 149 Ariz. 269, 718 P.2d 171 (1986). The Court stated:

> We conclude, therefore, that to determine whether the HGN test satisfies the *Frye* requirement of general acceptance the appropriate disciplines include behavioral psychology, highway safety and, to a lesser extent, neurology and criminalistics.

*Id.* at 278, 718 P.2d at 180.

2. Officer Duck, who administered the HGN test to appellant, described horizontal gaze nystagmus and the HGN test as follows:

> A. The horizontal gaze nystagmus is an involuntary twitching of the eyes, okay. Check to see if an individual can follow an object smoothly, okay. *Everybody has nystagmus, but it is not visible. The, ah, use of alcohol, what it does it magnifies it to the point where it can be seen in the naked eye.* Ah, the test that was administered is in three different phases, it is in three phases for each eye. The first test, what we use, an[d] what I used that day was a pen light. what we do is we have the individual ... well, first, we ask if he does wear contact lenses? Mr. Miller stated he did not. Certain type contact lenses you cannot administer the test with. The first thing you do is have the individual fix his eyes on an object, in this case it was a pen light. What we do is, we have him follow the object as far out to either side as possible and then back. It is usually about 2—3 seconds over and back. If his eye doesn't follow the object smoothly we score him. a point. For example, not following smoothly is like rolling a marble on a piece of concrete or sidewalk, it goes in a jerky motion. The second phase would be lack of-destinct [sic] nystagmus is maximum deviation. What we do is we have the individual follow the object out as far to the side as he can, and keep the object out there for 3 to 4 seconds, and bring it back in. What I am looking for is involuntary twitching of the eye while he is watching the object out to the side as far as he can, if that is

dation for the admission of the testimony regarding the results of the test. Though Officer Duck's testimony mentioned the scientific principle underlying the HGN test, his brief training session on how to properly administer the test was insufficient to qualify him to testify either about the scientific principle that consumption of alcohol causes Nystagmus or about the principle's general acceptance in the appropriate scientific communities. We, therefore, hold that the trial court erred in admitting testimony regarding the results of the HGN test since the Commonwealth did not establish an adequate foundation for admission of the test results. We, however, decline to determine the validity and future admissibility of the HGN test since the record presently before us is bereft of any legal or scientific discussion regarding the HGN test's validity or admissibility. Our holding is premised solely on the Commonwealth's failure to present an adequate foundation regarding the HGN test's validity and admissibility.

■ Even though the admission into evidence of the results of the HGN test was error, we believe that the error was harmless since there was sufficient other evidence to sustain the jury's verdict that appellant was guilty of driving under the influence of alcohol (75 Pa.C.S.A. § 3731). In *Commonwealth v. Boerner*, 268 Pa.Super. 168, 407 A.2d 883 (1979), *appeal dismissed*, 491 Pa. 416, 421 A.2d 206 (1980), this Court held that, due to improper certification, admission of breathalyzer results into evidence was error. Noting that intoxication is not a condition outside the realm of understanding or powers of observation of ordinary persons, we also held that the error was harmless in light of the overwhelming testimonial evidence of appellant's intoxi-

present, score another point. The third phase would be this destinct [sic] nystagmus prior to looking at a 45 degree angle, what we do is we have him follow the object slowly and if the nystagmus or twitching is present looking at the 45 degree angle that is another point. We do that with both eyes, so it would be a maximum of 6 points.

N.T. 4/23/86 at pp. 90–91 (emphasis added).

cation. *Id.*, 268 Pa.Superior Ct. at 170–173, 407 A.2d at 885–886. In *Boerner*, both the officer who arrested the defendant and the state trooper who administered the breathalyzer test testified that they concluded the defendant was intoxicated after observing his staggering walk and his slurred and incoherent speech, as well as detecting a strong odor of alcohol about him. *Id.*, 268 Pa.Superior Ct. at 170, 407 A.2d at 885. In the instant situation, both Officer Duck and Officer Bruno, the other arresting officer, testified that appellant "had bloodshot eyes, that he smelled of alcohol, that his speech was slurred, that he was boisterous and agitated, and that he had been driving in an erratic fashion." Trial court opinion of December 31, 1986 at p. 5. In addition, Officer Bruno also testified that appellant was unable to successfully perform three field sobriety tests—finger-to-nose test, standing on one leg balance test, and the heel to toe test. Further, the officer testified that appellant was able to successfully complete the recitation-of-alphabet test only after two attempts. *See* N.T. 4/23/86 at pp. 51–54. In light of the testimonial evidence of appellant's intoxication, the admission into evidence of the results of the HGN test was harmless error. We find that the arresting officers' observations of appellant, as well as appellant's performance on the other field sobriety tests, established a sufficiently independent basis for the jury's verdict that appellant was guilty of driving under the influence of alcohol. *Cf. Commonwealth v. McGinnis*, 511 Pa. 520, 524, 515 A.2d 847, 850 (1986).

Appellant next contends that the trial court erred in admitting, for the purpose of impeachment, evidence of appellant's prior convictions for burglary, theft, and receiving stolen property. In essence, appellant maintains that the trial court failed to properly consider the factors of the *Roots–Bighum* test in considering whether appellant's prior convictions were admissible as impeachment evidence. Appellant's contention, however, is rendered moot since the guidelines enunciated in *Commonwealth v. Bighum*, 452

Pa. 554, 307 A.2d 255 (1973) and *Commonwealth v. Roots,* 482 Pa. 33, 393 A.2d 364 (1978), regarding admissibility of a defendant's prior convictions for impeachment purposes are no longer the controlling law of the Commonwealth. In *Commonwealth v. Randall,* 515 Pa. 410, 528 A.2d 1326 (1987), our Supreme Court significantly altered the *Roots–Bighum* guidelines for determining admissibility of prior convictions. The Court stated:

> [W]e do modify our current rule to the following extent: evidence of prior convictions can be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statement, *and the date of conviction or the last day of confinement is within ten years of the trial date.* If a period greater than ten years has expired the presiding judge must determine whether the value of the evidence substantially outweighs its prejudicial effect.

*Randall,* 515 Pa. at 415, 528 A.2d at 1329 (emphasis added).

■ Considering the above rule, the evidence of appellant's prior convictions was admissible. First, appellant's two prior convictions, one for burglary and theft and the other for receiving stolen property, are "crimen falsi and thus highly pertinent to veracity and credibility." *Commonwealth v. Henderson,* 497 Pa. 23, 36, 438 A.2d 951, 957 (1981). Second, the convictions both occurred four years prior to appellant's trial in the present case, which comports with the *Randall* requirement that "the date of conviction ... is within ten years of the trial date." *Randall,* at 415, 528 A.2d 1329. Appellant's convictions, consequently, were properly admitted into evidence for the purpose of impeachment.

Judgment of sentence affirmed.