603 A.2d 1023

COMMONWEALTH of Pennsylvania, Appellant,

v.

William P. APOLLO.

Superior Court of Pennsylvania.

Argued Sept. 17, 1991.

Filed Jan. 9, 1992.

Reargument Denied March 16, 1992.

John T. Robinson, Dist. Atty., Selinsgrove, for Com.

Thomas C. Clark, Middleburg, for appellee.

Before POPOVICH, HUDOCK and CERCONE, JJ.

CERCONE, Judge:

This is an appeal by the Commonwealth of an order of the Court of Common Pleas of Snyder County, precluding the admission at trial of any testimony relating to the administration of a field sobriety test, the horizontal gaze nystagmus (HGN) test, to defendant/appellee. We affirm.

On January 8, 1990, state trooper Michael R. Connelly filed a criminal complaint against appellee, charging him with driving under the influence of a controlled substance,[1] and driving a vehicle in the wrong lane.[2] At a pre-trial hearing on appellee's motion for omnibus pre-trial relief, Officer Connelly testified that, on the date of appellee's arrest, he observed appellee operate his motor vehicle at an

1. 75 Pa.C.S. § 3731(a)(1).
2. *Id.* § 3309(1).

excessive speed, cross the centerline of the highway three times, and weave within his own lane of travel. After stopping appellee, Trooper Connelly testified that he noted an odor of alcohol on appellee's breath. He then administered three field sobriety tests to appellee: the "walk and turn" test, the "one-leg stand" test, and the "horizontal gaze nystagmus" (HGN) test.[3] Appellee failed all three of the tests which the officer administered. Trooper Connelly also testified that appellee refused to submit to any chemical tests of his blood, breath, or urine.

After examining the transcript of the pre-trial hearing on appellee's omnibus motion for pre-trial relief, the lower court granted appellee's request to suppress "the results or discussion of" the HGN test, "subject to the Commonwealth's ability to request reconsideration." Subsequently, the Commonwealth indicated to the court that it wished to offer foundation testimony which would permit it to introduce evidence of the administration and results of the HGN test. The court treated this request as a motion *in limine*, and conducted a hearing on the issue on August 29, 1990. At the hearing, Dr. W. Reynolds Sisson, an optometrist, testified for the Commonwealth. Following this hearing, the lower court issued an order denying the Commonwealth's motion *in limine* and precluding any reference at

---

**3.** Nystagmus is a medical term which refers to the rhythmic oscillation of the eyeball in either a horizontal, vertical, or rotary direction. *Commonwealth v. Miller*, 367 Pa.Super. 359, 364, 532 A.2d 1186, 1188 (1987), (*citing* Stedman's Medical Dictionary 971 (5th Lawyers Ed. 1982)).

> In the HGN test the driver is asked to cover one eye and focus the other on an object (usually a pen) held by the officer at the driver's eye level. As the officer moves the object gradually out of the driver's field of vision toward his ear, he watches the driver's eyeball to detect involuntary jerking. The test is repeated with the other eye. By observing (1) the inability of each eye to track movement smoothly, (2) pronounced nystagmus at maximum deviation and (3) onset of the nystagmus at an angle less than 45 degrees in relation to the center point, the officer can estimate whether the driver's blood alcohol content (BAC) exceeds the legal limit of .10 percent.

*Commonwealth v. Miller*, 367 Pa.Super. at 365, 532 A.2d at 1188–89 (*quoting State v. Superior Court*, 149 Ariz. 269, 271, 718 P.2d 171, 173 (1986)).

trial to the administration or results of the HGN test on appellee. From this order, the Commonwealth filed the instant timely appeal in which it contends that the lower court erred in ruling that the proposed testimony regarding the HGN test was inadmissible.

▪ We will first consider whether the Commonwealth's appeal of the lower court's order is properly before us. *See Commonwealth v. Call,* 249 Pa.Super. 511, 378 A.2d 412 (1977) (appellate court may raise a jurisdictional question *sua sponte*). The jurisdiction of the Superior Court is generally confined to appeals from final orders of the courts of common pleas. 42 Pa.C.S.A. § 742. An order is interlocutory and not final unless it effectively puts the litigant out of court. *T.C.R. Realty, Inc. v. Cox,* 472 Pa. 331, 372 A.2d 721 (1977). Ordinarily, pre-trial orders are considered interlocutory and not appealable. *Commonwealth v. Bennett,* 236 Pa.Super. 509, 345 A.2d 754 (1975).

▪ An exception to the final order rule exists in the case of orders of the lower court suppressing evidence sought to be admitted by the Commonwealth in a criminal trial. In such a case, the Commonwealth may appeal a suppression order as a final order "when the Commonwealth certifies in good faith that the suppression order terminates or substantially handicaps the prosecution." *Commonwealth v. Dugger,* 506 Pa. 537, 546–47, 486 A.2d 382, 386 (1985). "Such certification is required as a means of preventing frivolous appeals and appeals intended solely for delay." *Id.,* 506 Pa. at 547, 486 A.2d at 386. The Commonwealth's certification that its prosecution is substantially handicapped is "not contestable." *Id.,* 506 Pa. at 545, 486 A.2d at 386. The certification, "in and of itself, precipitates and authorizes the appeal." *Id.* Pre-trial orders which are not suppression orders but which have the effect thereof may be appealed as final orders in an appropriate case. *See Commonwealth v. Johnson,* 399 Pa.Super. 266, 582 A.2d 336 (1990) (Commonwealth was permitted appeal from pretrial order granting motion *in limine* excluding testimony of Commonwealth expert where Commonwealth certified

that order substantially handicapped its prosecution); *Commonwealth v. Sale,* 395 Pa.Super. 272, 577 A.2d 214 (1990), *allocatur denied,* 528 Pa. 609, 596 A.2d 156 (1991) (Commonwealth appeal permitted from pre-trial order excluding evidence of the reputation of appellee's business as a house of ill repute where Commonwealth certified that the order would seriously impair its ability to present its case and to prove the crime).

■■■ In the instant case, the Commonwealth has certified in its notice of appeal that the order of the lower court precluding the admission at trial of any testimony relating to the administration or results of the HGN test substantially handicaps its prosecution of the instant matter. The order is sufficiently similar to a suppression order to justify an appeal from it under the *Commonwealth v. Dugger* rationale. Therefore, we will consider the merits of appellant's contention on appeal. On appeal, the Commonwealth argues that the testimony of Dr. Sisson satisfied the Commonwealth's burden of proving that the scientific principles upon which the HGN test is based are generally accepted in the appropriate scientific community. The Commonwealth asserts that the lower court erred when it found that the foundation for the admission of evidence concerning the HGN had not been met.

In *Commonwealth v. Topa,* 471 Pa. 223, 369 A.2d 1277 (1977), our supreme court discussed what constitutes an adequate foundation for the admission of scientific evidence: [4]

Admissibility of the evidence depends upon the *general* acceptance of its validity by those scientists active in the field to which the evidence belongs[.]

"Just when a scientific principle of discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight

4. Scientific evidence has been defined as "evidence that draws its convincing force from some principle of science, mathematics and the like." *Commonwealth v. Miller,* 367 Pa.Super. at 363, 532 A.2d at 1188 (*quoting State v. Brown,* 297 Or. 404, 407, 687 P.2d 751, 754 (1984)).

zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, *the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." Frye v. United States*, 54 App.D.C. 46, 293 F. 1013, 1014 (1923) (emphasis supplied).

*Commonwealth v. Topa*, 471 Pa. at 231, 369 A.2d at 1281. The *Topa* court noted that strict application of this standard is necessary when scientific proof is offered in a criminal trial if the defendant is to receive a fair and just trial. *Id.,* 471 Pa. at 232, 369 A.2d at 1282. The court explained that "[t]he requirement of general acceptance in the scientific community assures that those most qualified to assess the general validity of a scientific method will have the determinative voice." *Id.,* 471 Pa. at 232, 369 A.2d at 1282 (*quoting United States v. Addison*, 498 F.2d 741, 744 (D.C.Cir. 1974)).

In *Topa,* the scientific evidence which the Commonwealth sought to admit consisted of certain voice spectograms which the police had prepared for purposes of identifying the defendant by voice comparison. At trial, a police officer testified for the Commonwealth as an expert in voice spectography. In his testimony, the officer attempted to establish the reliability of the technique. The court held that the required foundation for the admission of scientific evidence could not be satisfied on the basis of the testimony of one expert. *Commonwealth v. Topa*, 471 Pa. at 232, 369 A.2d at 1282. Further, the court concluded, based on its study of other cases and commentaries which had addressed the issue, the reliability of sound spectography and voice identification had not been established. *Id.* Since the court further found that the error in admission of this evidence was prejudicial, it awarded appellant a new trial. *Id.,* 471 Pa. at 233, 369 A.2d at 1282.

In *Commonwealth v. Miller*, 367 Pa.Super. 359, 532 A.2d 1186 (1987), a panel of this court considered the issue of the

admissibility of evidence of the horizontal gaze nystagmus (HGN) test in a criminal trial. The court in that case determined that HGN test results are scientific evidence because the test is based on the scientific principle that consumption of alcohol causes the type of gaze nystagmus measured by the HGN test. *Id.*, 367 Pa.Superior Ct. at 365, 532 A.2d at 1189. Consequently, the party seeking to admit the results of the HGN test is required to establish the foundation for admission of scientific evidence described in *Topa*. *Id.*, 367 Pa.Superior Ct. at 365–66, 532 A.2d at 1189.

In *Miller*, the court found the testimony of the police officer which was submitted in support of admission of the HGN test results insufficient to permit admission of the evidence. According to the panel, the sole testimony supporting the admission of the test came from a police officer "whose only specialized training in this area was a two day course on the proper use of the HGN test and other field sobriety tests." *Id.*, 367 Pa.Superior Ct. at 366, 532 A.2d at 1189. The panel determined that the officer's "brief training session" was "insufficient to qualify him to testify either about the scientific principle that consumption of alcohol causes Nystagmus or about the principle's general acceptance in the appropriate scientific communities." *Id.*, 367 Pa.Superior Ct. at 367, 532 A.2d at 1189–90. While finding that the Commonwealth had not established an adequate foundation for the admission of the HGN evidence in that particular case, the panel declined to determine the future admissibility of evidence concerning the test, "since the record presently before us is bereft of any legal or scientific discussion regarding the HGN test's validity or admissibility." *Id.*, 367 Pa.Superior Ct. at 367, 532 A.2d at 1190.

The *Topa* standard for admissibility of scientific evidence was further refined in *Commonwealth v. Middleton*, 379 Pa.Super. 502, 550 A.2d 561 (1988). In that case, the lower court permitted the Commonwealth to admit evidence of electrophoresis of dried blood stains in connection with its prosecution of appellant for first degree murder. The *Middleton* court reviewed the *Topa* standard and the holding of the *Topa* court and added a qualification thereto:

if, as here, the expert witness's opinion is not merely based upon his personal views, or the views of a small segment of the scientific community, but rather, is to the effect that the scientific procedure has gained general acceptance in the scientific community as a whole due to its reliability, as evidenced by published scientific studies, then the testimony of a single expert is not deficient merely because *numerous* experts were not called to testify.

*Id.*, 379 Pa.Superior Ct. at 512, 550 A.2d at 566. In *Middleton,* the court found that the lower court had correctly ruled the testimony as to the electrophoresis admissible. Although the Commonwealth presented the testimony of only one expert, that expert's testimony established that electrophoresis had gained general acceptance in the appropriate scientific community as required by *Topa. Id.,* 379 Pa.Superior Ct. at 513, 550 A.2d at 566.

In the instant case, Dr. Sisson testified for the Commonwealth. He indicated that he is a behavioral optometrist who evaluates eye health and visual performance. He testified as to his familiarity with the HGN test, which he administers on a regular basis to his own patients. Dr. Sisson stated that he is qualified as a certified instructor on standardized field sobriety, and has testified several times as an expert witness on the HGN test. Dr. Sisson conducted his own study of the incidence of gaze nystagmus in "sober" persons. His study indicated that approximately one in five hundred sober patients would fail the HGN test, in contrast to national studies which have estimated a failure rate of two to four percent in a similar population. Dr. Sisson testified that he was aware of no studies evaluating the reliability of the HGN test that have reached any conclusion other than that it is the most accurate field sobriety test available.

The lower court evaluated Dr. Sisson's testimony under the standards set forth in *Commonwealth v. Topa* and related cases. It also considered the evidence submitted by the defense. *See* Rouleau, *Unreliability of the Horizontal Gaze Nystagmus Test,* 4 AM.JUR. POF 3d 439 (1989).

That evidence revealed that the data and studies which have supported the reliability of the HGN test have been criticized. The evidence submitted by the defense also described the phenomenon of the incidence of nystagmus resulting from causes other than consumption of alcohol. One of the conclusions of the defense evidence was that "the reliability of the horizontal gaze nystagmus test is not a settled proposition within the scientific community." *Id.* at 452. After evaluating the evidence submitted by both parties, the lower court concluded that it "was convinced" that the HGN test was an "appropriate field test for sobriety." However, relying on *Commonwealth v. Miller,* and stating that it must abide by the Superior Court's determination, the lower court concluded that admission of evidence of the HGN test was precluded.

The admission or exclusion of evidence is within the sound discretion of the trial judge. *Commonwealth v. Cargo,* 498 Pa. 5, 444 A.2d 639 (1982); *Commonwealth v. Davis,* 394 Pa.Super. 591, 576 A.2d 1005 (1990). The trial court's rulings on such matters will be reversed on appeal only for a clear abuse of that discretion. *Commonwealth v. Cargo,* 498 Pa. at 15, 444 A.2d at 644. In the instant case, Dr. Sisson's testimony did not establish the general acceptance in the scientific community of the HGN test as required by *Topa* and its progeny. While there is no doubt that Dr. Sisson deemed the HGN to be quite reliable, and while he stated that he was unaware of any studies questioning the accuracy of the HGN test, his testimony fell short of establishing the "general acceptance in the scientific community" standard. Dr. Sisson's testimony was largely based on his own personal views and observations. This is the type of testimony which has been determined to be insufficient to satisfy the *Topa* standard. *See Commonwealth v. Middleton,* 379 Pa.Super. at 511–12, 550 A.2d at 566; *Commonwealth v. Topa,* 471 Pa. at 230, 369 A.2d at 1281. In addition, there was evidence before the lower court which demonstrated that the HGN technique has not been accepted to the extent that it meets the *Topa* stan-

462

dard. Under these circumstances, we cannot say that the lower court abused its discretion when it precluded the admission at trial of any evidence concerning the administration to appellant of the HGN test or of the results of that test.

Order affirmed.