678 A.2d 1200

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Samuel C. STRINGER, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted March 21, 1996.

Filed June 4, 1996.

182

■■■■■■■■■■■■■■■■

Arthur S. Cohen, Hollidaysburg, for appellant.

Mark S. Smith, Assistant District Attorney, Bellefonte, for Commonwealth, appellee.

Before POPOVICH, SAYLOR and EAKIN, JJ.

POPOVICH, Judge.

This is an appeal from the judgment of sentence entered on August 2, 1994 in the Court of Common Pleas of Centre County following appellant's conviction of Driving Under the Influence, 75 Pa.C.S.A. § 3731(a)(1). Appellant presents the following three issues for review: Whether the Horizontal Gaze Nystagmus test is admissible in a driving under the influence prosecution; whether the existence of medical treatment to passengers in another vehicle was relevant and admissible; and whether the Horizontal Gaze Nystagmus test as administered by the arresting officer deprived appellant of his right to cross examine the witness effectively. Upon review, we find that the trial court incorrectly admitted expert testimony on the Horizontal Gaze Nystagmus test, and, thus, we need not address appellant's remaining two issues. Accordingly, we reverse the judgment of sentence and remand for a new trial.

On April 2, 1993, at approximately 11:11 p.m., appellant was involved in a two vehicle collision along West College Avenue in State College, Pennsylvania. Officer Robert W. Glenny, Jr. of the Ferguson Township Police Department arrived on the scene of the accident. Appellant told Officer Glenny that he was the operator of one of the vehicles in the accident, and he complained to the officer of pain in his knee. Upon detecting a strong odor of alcohol on appellant's breath, Officer Glenny requested that appellant submit to a Horizontal Gaze Nystagmus test (HGN test). Appellant failed the test and was placed under arrest for Driving Under the Influence without performing any other field sobriety tests. Appellant was thereafter transported to Centre Community Hospital and advised of

the Implied Consent Law. Appellant refused to submit to a blood alcohol content test.

Appellant's principal argument on this appeal is that the trial court erred in allowing the expert testimony of Dr. Reynolds Sisson, an optometrist, who explained and advocated the HGN test. The HGN test "relates to the detection of an involuntary jerking of the eyes, which [is] accentuated by the introduction of alcohol or other central nervous system depressants into the body." *Commonwealth v. Moore*, 430 Pa.Super. 575, 582, 635 A.2d 625, 628 (1993). The test is administered as follows:

In the HGN test the driver is asked to cover one eye and focus the other on an object (usually a pen) held by the officer at the driver's eye level. As the officer moves the object gradually out of the driver's field of vision toward his ear, he watches the driver's eyeball to detect involuntary jerking. The test is repeated with the other eye. By observing (1) the inability of each eye to track movement smoothly, (2) pronounced nystagmus at maximum deviation and (3) onset of the nystagmus at an angle less than 45 degrees in relation to the center point, the officer can estimate whether the driver's blood alcohol content (BAC) exceeds the legal limit of .10 percent.

*Commonwealth v. Miller*, 367 Pa.Super. 359, 365, 532 A.2d 1186, 1188–89 (1987) (quoting *State v. Superior Court*, 149 Ariz. 269, 271, 718 P.2d 171, 173 (1986)).

■ HGN test results have been deemed scientific evidence based on the scientific principle that alcohol consumption causes nystagmus. *Miller, supra,* 532 A.2d at 1189. Therefore, an adequate foundation must be presented prior to admission of HGN test results. *Id.; Commonwealth v. McGinnis*, 511 Pa. 520, 524, 515 A.2d 847, 849 (1986). Our Supreme Court has defined what constitutes an adequate foundation as follows:

Admissibility of the evidence depends upon the *general* acceptance of its validity by those scientists active in the field to which the evidence belongs[.] 'Just when a scientific

principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, *the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.' Frye v. United States,* 54 App. D.C. 46, 293 F. 1013, 1014 (1923) (emphasis supplied).

*Miller, supra,* 532 A.2d at 1188 (quoting *Commonwealth v. Topa,* 471 Pa. 223, 231, 369 A.2d 1277, 1281 (1977)).

The standard of admissibility set forth in *Topa* was further defined to require that the expert witness' testimony be based on more than mere personal beliefs or the views of a small segment of the relevant scientific community. *Commonwealth v. Apollo,* 412 Pa.Super. 453, 459–61, 603 A.2d 1023, 1027 (1992). Rather, the testimony must establish that the scientific procedure "has gained general acceptance in the scientific community as a whole due to its reliability, as evidenced by published scientific studies." *Id.* (quoting *Commonwealth v. Middleton,* 379 Pa.Super. 502, 512, 550 A.2d 561, 566 (1988)).

Our Supreme Court has not yet determined the admissibility of HGN test results in criminal proceedings. However, on three occasions, this court has refused to allow the admission of HGN results without first establishing an adequate foundation. In *Miller, supra,* 367 Pa.Super. 359, 532 A.2d 1186, this court held that the testimony of a police officer, whose only expertise in the area was a two-day course on the proper use of the HGN test, was not sufficient to establish the scientific principle involved and its general acceptance in the scientific community. Although the officer's testimony failed to establish an adequate foundation, the court found its admission to be harmless error in light of the abundant testimonial evidence against the appellant. *Id.,* 532 A.2d at 1190.

In *Moore, supra,* 430 Pa.Super. 575, 635 A.2d 625, a county detective, certified as an instructor in the HGN test, testified that the principles upon which the HGN test is based are generally accepted in the optometric and police science communities. This court reversed the trial court's admission of the detective's testimony stating that, under the present state of the law, the detective "did not provide an adequate basis for finding that HGN testing had gained general acceptance in the scientific community, particularly in the field of medical science represented by ophthalmology." *Id.,* 635 A.2d at 629.

Most significant to the present case is this court's decision in *Apollo, supra,* 412 Pa.Super. 453, 603 A.2d 1023. The Commonwealth presented the testimony of an optometrist named Dr. Reynolds Sisson, the expert who testified in the present case, to establish the foundation for the HGN test. In *Apollo,* Dr. Sisson testified that he was certified as an instructor on standardized field sobriety and has testified several times as an expert on the HGN test. *Id.,* 603 A.2d at 1027. Dr. Sisson explained that his own study on the reliability of the HGN test revealed that one out of five-hundred sober individuals failed the HGN test, whereas, national studies have estimated a two to four percent failure rate. *Id.* Dr. Sisson further testified that he was aware of no studies which contradict the finding that the HGN test is the most accurate field sobriety test available. *Id.* This court concluded that Dr. Sisson's testimony was "largely based on his own personal views and observations", and, thus, insufficient to establish the general acceptance of the HGN test in the scientific community. *Apollo, supra,* 603 A.2d at 1027–28.

It is within the sound discretion of the trial court to admit or exclude evidence and such a ruling will not be disturbed absent a clear abuse thereof. *Commonwealth v. Cargo,* 498 Pa. 5, 444 A.2d 639 (1982); *Apollo, supra,* 603 A.2d at 1027. In the present case, Dr. Sisson's testimony was nearly identical to that presented in *Apollo* with no additional foundation testimony. As stated in *Moore,* until our Supreme Court addresses this issue, Pennsylvania law requires that an adequate foundation be set forth establishing that HGN test-

ing is generally accepted in the scientific community, including the medical science field of ophthalmology.

▮ The testimony given by Dr. Sisson in this case added no further foundation than his testimony in *Apollo.* Therefore, we too must hold that the trial court erred in admitting the HGN test results and Dr. Sisson's testimony. Furthermore, unlike *Miller,* the trial court's error was not harmless since no other field sobriety tests were administered, and appellant refused to submit to a blood alcohol content test. Accordingly, we reverse the judgment of sentence and remand this case for a new trial consistent with this opinion.

Reversed and remanded; jurisdiction relinquished.

EAKIN, J., files a concurring opinion.

EAKIN, Judge, concurring.

While I concur in the result, I disagree that Dr. Sisson's testimony failed to establish an adequate basis to admit evidence of nystagmus and its accentuation by alcohol. I believe it is important to differentiate Dr. Sisson's proper testimony about the causal relationship between alcohol consumption and nystagmus from his testimony about the "HGN test," which is inadmissible under existing caselaw. (*Commonwealth v. Apollo,* 412 Pa.Super. 453, 603 A.2d 1023 (1992)).

That consumption of alcohol causes nystagmus is no longer a question in the scientific community. That other factors may also induce nystagmus should not affect the admissibility of nystagmus testimony; factors other than alcohol may cause slurred speech or a staggered gait, but these resulting conditions are admissible beyond question. Not everyone who stumbles is intoxicated. Not every intoxicated person stumbles. Does this mean stumbling cannot be admitted to show intoxication? Clearly not—it is admissible, subject to explanation or refutation. The same should be true for nystagmus evidence.

The difference is that nystagmus evidence must come from an expert who can relate alcohol consumption to the tell-tale

involuntary jerking of the eyes. It is proper testimony, despite some gap in scientific acceptance of cause and effect, to address the general public's lack of familiarity with nystagmus. After all, the average person may be familiar with the most obvious signs of intoxication; they are hard to miss. Who, however, has watched an intoxicated person's eyes' ability to move smoothly as they follow an object passed in front of them? The fact that the average person may not detect nystagmus does not mean it does not exist—it just means the average person does not connect alcohol to the jerking movement of an individual's eyes. Science can and does, and the connection is not so tenuous as to make all evidence of nystagmus inadmissible.

In the instant case, however, Dr. Sisson testified beyond the mere relationship between alcohol and nystagmus. He testified on "scoring" the driver, and inferred a connection between scoring and a blood alcohol level. This connection is not subject to agreement within the scientific community, and it is this portion of Dr. Sisson's testimony that is objectionable. Had Dr. Sisson confined his testimony to the relationship between alcohol consumption and nystagmus, I believe his testimony would have been proper and admissible.