J-S09021-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SUSAN RUTH KELLY | : | |
| | : | |
| Appellant | : | No. 2275 EDA 2019 |

Appeal from the Judgment of Sentence Entered December 14, 2018
In the Court of Common Pleas of Carbon County Criminal Division at
No(s):  CP-13-CR-0000116-2016

BEFORE:   SHOGAN, J., LAZARUS, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.:                     **Filed May 5, 2020**

Susan Ruth Kelly appeals from the judgment of sentence, entered in the
Court of Common Pleas of Carbon County, following her convictions for driving
under the influence (DUI)—controlled substance[1] and careless driving[2] at a
non-jury trial.  Upon careful review, we affirm.

The Honorable Joseph J. Matika summarized the relevant facts and
procedural history of the case as follows:

> On April 12, 2015, at approximately 2:33 P.M., Officer Tyler Meek
> (hereinafter "[Officer] Meek") was dispatched to the McDonald's
> parking lot in Mahoning Township, Carbon County, Pennsylvania
> for a motor vehicle accident.  [Officer Meek observed damage to

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(d)(2).

[2] 75 Pa.C.S.A. § 3714(a).

a red Mini-Cooper driven by Kelly and another vehicle, and concluded Kelly's vehicle struck the other vehicle.]

[Officer Meek also noticed that Kelly] appeared confused and disoriented,[4] had very glossy eyes and had trouble standing without holding onto her vehicle.[5]  [In determining whether to contact a Drug Recognition Expert (D.R.E.), Officer Meek initiated some field tests.  Kelly nearly fell over several times during that testing.  Upon completing his investigation, Officer Meek believed it was necessary to contact a D.R.E. and he transported Kelly to a local hospital to meet with one.]

[4] On cross-examination, [Officer] Meek elaborated on Kelly's confusion by stating that she [neither knew] what time it was nor what day it was.

[5] At no time during the course of the investigation did Kelly ever express that she had a medical condition that caused her to have balance issues.

* * *

Corporal Shawn Noonan (hereinafter "[Corporal] Noonan") of the Pennsylvania State Police, a D.R.E., also testified at trial.  After being qualified as such, he testified regarding the twelve[-]step process to determine if a person is capable of safely operating a motor vehicle while under the influence of a controlled substance and then testified as to how he initiated these twelve steps in this case.  [One of the steps he utilized involved three tests: Horizontal Gaze Nystagmus (HGN) test, Vertical Gaze Nystagmus (VGN) test, and lack of convergence test.]

[Corporal] Noonan also testified that [as] part of his D.R.E. report, he interviews the person being administered the [exam].  After properly [*M]irandizing*[3] Kelly, he elicited the following information:  1) Kelly took a Xanax before leaving the house for tooth pain; 2) Kelly took Hydrocodone earlier in the morning that day; 3) that she struck the other vehicle from behind as she was unable to stop after [the other vehicle] had started and abruptly stopped; and 4) the date of the incident was Sunday and the [then-]present time was 1:00 P.M.[7]  [Corporal] Noonan also testified to various observations he made of Kelly which were part

---

[3] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

of the D.R.E. exam including: lethargy, reddening of conjunctiva, an impaired perception of time, general confusion, constricted pupils and the lack of reaction to a light stimuli. [Corporal] Noonan explained that each of these observations, based upon his training and experiences, can be conditions caused by the use of a central nervous system depressant such as Xanax or a narcotic analgesic such as Hydrocodone.

> [7] The time of the interview of Kelly by [Corporal] Noonan was 3:00 P.M. and [the incident occurred on] a Monday, not a Sunday.

* * *

Kelly also took the witness stand. [] On the date in question, she testified that around 6:00 A.M., she took a Xanax and a Vicodin.[10]

> [10] Vicodin is the generic name for Hydrocodone.

* * *

[At the conclusion of the trial,] this [c]ourt found Kelly guilty of the [charges against her]. [Subsequently], Kelly was sentenced on the D.U.I. charge to a period of six (6) months in the County Intermediate Punishment Program with sixteen (16) days in a Qualified Restrictive Intermediate Punishment Program (home electronic monitoring). Various conditions were also placed on this sentence. On the [c]areless [d]riving charge, Kelly was sentenced to a $25.00 fine and costs.

Trial Court Opinion, 06/02/19, at 1-7 (some footnotes omitted).

Following sentencing, Kelly filed post-sentence motions, which were denied. This timely appeal follows, in which Kelly raises the following claims for our review:

> (1) Whether the [t]rial [c]ourt erred by allowing a police officer, who[] was not offered as an expert witness, to testify to his opinion on whether [] Kelly was impaired by her prescription medications to the point where she could not drive safely?
>
> (2) Whether the [t]rial [c]ourt erred by allowing testimony on any performance on the HGN, VGN, or lack of convergence field sobriety tests without evidence that these tests have gained general acceptance in the scientific community?

Appellant's Brief, at 4.

Kelly first claims the trial court erred when it allowed Officer Meek to "opine that she was impaired by her medications to the point where she could not drive safely." Appellant's Brief, at 9. At trial, the Commonwealth offered Officer Meek as a lay witness. During Officer Meek's testimony, Kelly objected to the following Commonwealth question on the grounds that it elicited an expert opinion:

> Q. [BY MR. GREEK]: Okay, [a]nd based upon your education, your training and experience with suspected drivers being under the influence of a controlled substance and your observations of the Defendant at the time that you had her out of the vehicle, do you have an opinion whether she was under the influence of a controlled substance at the time you had contact with her?
>
> MR. MOTTOLA: I would object to an expert conclusion, Your Honor.
>
> MR. GREEK: I think I laid a foundation on how many times he has seen individuals that he suspected and how many arrests he made.
>
> THE COURT: Well, I believe that based on his training and experience, he does not need to be an expert to render such an opinion. As a police officer, he has that ability, or else he wouldn't be making arrests. Overruled.
>
> Q. [BY MR. GREEK]: Do you have an opinion on whether she was under the influence of a controlled substance at the time that you had contact with her?
>
> A. Yes, I feel she was and she was incapable of safe driving due to that.

N.T. Trial, 8/14/18, at 13.

Our standard of review for challenges to admissibility of evidence is well-settled: "The admissibility of evidence is a matter for the discretion of the

trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion." **Commonwealth v. Poplawski**, 130 A.3d 697, 716 (Pa. 2015) (quoting **Commonwealth v. Sherwood**, 982 A.2d 483, 495 (Pa. 2009)). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Id.** The admissibility of lay opinion testimony is governed by Pennsylvania Rule of Evidence 701 (Opinion Testimony by Lay Witnesses).

Rule 701 states:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a)    rationally based on the witness's perception;

(b)    helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c)    not based on scientific, technical, or other specialized knowledge within the scope of rule 702.

Pa.R.E. 701. Additionally, lay witnesses may testify to someone's readily observable physical condition or appearance that does not require medical training. **Commonwealth v. Gause**, 164 A.3d 532, 538 (Pa. Super. 2017).

At trial, Officer Meek testified that he personally observed Kelly and that she appeared confused, had very glossy eyes, and had trouble standing without holding onto her vehicle. He further testified that Kelly nearly fell over several times when he attempted to administer standard field sobriety tests.

The Commonwealth's questioning of Officer Meek did not elicit his opinion of whether Kelly was incapable of driving safely because she was under the influence. Rather, the Commonwealth's question simply inquired as to Officer Meek's opinion of whether Kelly was under the influence of a controlled substance at the time he observed her. This Court has previously held that such questioning is permissible. *See Commonwealth v. DiPanfilo*, 993 A.2d 1262, 1267-69 (Pa. Super. 2010) (holding lay witnesses may testify as to their opinion that individual was under influence of cocaine and opiates because their intoxicating effects are widely and commonly understood)[3];

---

[3] Kelly testified that she ingested both prescription Xanax and Vicodin in the hours prior to her vehicle collision. Kelly relies on our opinion in *Commonwealth v. DiPanfilo*, 993 A.2d 1262 (Pa. Super. 2010) to support her claim that:

> The intoxicating effects of cocaine and opiates, like the intoxicating effects of alcohol, are more widely and commonly understood such that an ordinary person could conclude that a person was under the influence of these substances [whereas] the side-effects of *prescription drugs* may not be widely or publicly known, particularly when they are used to treat an underlying medical condition.

*See* Appellant's Brief, at 12 (emphasis added).

In *DiPanfilo*, we relied on our now-reversed decision in *Commonwealth v. Griffith*, 985 A.2d 230 (Pa. Super. 2009), wherein we drew a distinction between the well-known intoxicating effects of cocaine, opiates, and alcohol, and the effects of prescription drugs, in deciding whether expert witnesses were required, *as a matter of sufficiency of the evidence*, to sustain the appellant's DUI conviction. *DiPanfilo*, 993 A.2d at 1267. Our holding that experts were required for sufficiency purposes was overruled just one year

*Commonwealth v. Neiswonger*, 488 A.2d 68, 69 (Pa. Super. 1985) (holding testimony by non-experts on whether person is intoxicated is admissible).

Here, Officer Meek testified from his own observations and perceptions of Kelly's appearance and actions, informed by his training and experience. That testimony was helpful in understanding Officer Meek's testimony and in determining a fact in issue, and it was not based upon any scientific, technical, or other specialized knowledge. *See Gause*, *supra*; Pa.R.E. 701. Therefore, the trial court did not abuse its discretion by admitting Officer Meek's lay opinion testimony pursuant to Pa.R.E. 701. *See Poplawski*, *supra*.

Next, Kelly challenges the admission of Corporal Noonan's testimony. Corporal Noonan testified as to his observations while administering the HGN, the VGN, and the lack of convergence tests on Kelly. At trial, Kelly objected to any testimony relating to her performance on those tests. The trial court

---

later by our Supreme Court in *Commonwealth v. Griffith*, 32 A.3d 1231 (Pa. 2011). In reversing, our Supreme Court stated:

> We do not believe that the Superior Court's division of drugs into prescription versus non-prescription categories is warranted or helpful in the interpretation or application of subsection 3802(d)(2) or in the determination of whether an expert witness should be called. Pursuant to our general standard, a need for expert testimony arises when the jury is confronted with factual issues whose resolution requires knowledge beyond the ken of the ordinary layman.

*Id.* at 1239 (internal quotations and citations omitted). We do not find Kelly's distinction between prescription and non-prescription drugs useful or persuasive in the instant case.

overruled Kelly's objection, but prevented Corporal Noonan from testifying as to his ultimate conclusions on those tests, thus limiting his testimony to his observations and perceptions during his administration of the tests. Corporal Noonan's relevant testimony proceeded as follows:

> THE COURT: I am going to allow Corporal Noonan to testify regarding what he observed, but not his ultimate conclusions on the HGN, VGN or lack of convergence.
>
> * * *
>
> Q. [BY MR. GREEK]: Did you have the opportunity as part four of your eye examination to observe Susan Kelly's eyes?
>
> A. I did.
>
> Q. And can you comment on what you observed with regard to her and her eyes and her ability to follow a stimulus while you were performing the evaluation?
>
> A. Yes, I am trying to say this without saying other stuff. A precursor for later tests is to ensure that a person is able to follow my finger as I slowly move it back and forth, side to side. In this case, my finger was the stimulus. I raised it in front of her face and asked her if she could follow my finger as I moved it back and forth, from side to side. She was unable to follow it. Her eyes were jerky and they quickly returned to the center position.

N.T. Trial, 8/14/18, at 38-39.

Kelly relies on our decisions in **Commonwealth v. Apollo**, 603 A.2d 1023 (Pa. Super. 1992) and **Commonwealth v. Stringer**, 678 A.2d 1200 (Pa. Super. 1996), to support her claim that "without scientific foundation, the Commonwealth cannot present any evidence on a defendant's performance on the HGN." Appellant's Brief, at 20. Kelly further reasons that because the VGN and lack of convergence tests are similarly scientific in nature to the HGN,

no evidence on any of these three tests is admissible at trial, and consequently she is entitled to a new trial. *Id.* at 20-23. We find that this evidence was admitted in error, but that it was harmless error.

In *Apollo*, we held it was not an abuse of discretion for the trial court to exclude testimony relating to the results of an HGN test because the expert testimony did not "establish general acceptance in the scientific community of the HGN test." *Apollo*, 603 A.2d at 1027-28. In *Stringer*, we stated, "Pennsylvania law requires that an adequate foundation be set forth establishing that HGN testing is generally accepted in the scientific community, including the medical science field of ophthalmology." *Stringer*, 678 A.2d at 1203.

Here, the Commonwealth failed to establish any foundation setting forth whether the HGN, VGN, or lack of convergence tests are generally accepted in the scientific community. Therefore, Corporal Noonan's testimony relating to the results of Kelly's performance on those tests was admitted in error. *See Stringer*, *supra*.

On the *Stringer* facts—where additional evidence of guilt beyond the HGN was lacking—we held that the necessary foundation was missing and that there was reversible error where the trial court admitted the HGN test results through the expert's testimony. *Id.*

In *Stringer*, in holding that the admission was *not* harmless error, we stated:

> [U]nlike [**Commonwealth v. Miller**, 532 A.2d 1186 (Pa. Super. 1987)], the trial court's error was not harmless *since no other field sobriety tests were administered, and appellant refused to submit to a blood alcohol content test.* Accordingly, we reverse the judgment of sentence and remand this case for a new trial consistent with this opinion.

**Id.** (emphasis added).

By contrast, in **Miller** we found there *was* harmless error when an expert was permitted to testify regarding the results of an HGN test. **Miller**, 532 A.2d at 1190. In **Miller**, we stated:

> Even though the admission into evidence of the results of the HGN test was error, we believe that the error was harmless *since there was sufficient other evidence to sustain the jury's verdict* that appellant was guilty of driving under the influence of alcohol. [Both Officer Duck and Officer Bruno testified that appellant had bloodshot eyes, smelled of alcohol, had slurred speech, was boisterous and agitated, and drove erratically.] Officer Bruno also testified that appellant was unable to successfully perform three field sobriety tests [and] that appellant was able to successfully complete the recitation-of-alphabet test only after two attempts. In light of the testimonial evidence of appellant's intoxication, the admission into evidence of the results of the HGN test was harmless error. We find that the arresting officers' observations of appellant, as well as appellant's performance on the other field sobriety tests, established a *sufficiently independent basis* for the jury's verdict that appellant was guilty of driving under the influence of alcohol.

**Miller**, 532 A.2d at 1190 (quotations and citations omitted; emphasis added);

*see also Commonwealth v. Boerner*, 407 A.2d 883 (Pa. Super. 1979) (holding error in admitting breathalyzer evidence due to improper expert certification harmless in light of overwhelming testimonial evidence of appellant's intoxication.)

We find that the instant facts are on all fours with **Miller**, and are distinguishable from those in **Stringer**. Here, Officer Meek testified that he encountered Kelly's vehicle and, from his observations, determined that Kelly collided into the other vehicle. Officer Meek also testified that Kelly did not know the date, time, or day of the week and that Kelly appeared confused, had very glossy eyes, and that she had trouble standing without holding onto her vehicle. Officer Meek further testified that Kelly nearly fell over several times when he attempted to administer standard field sobriety tests. In addition, Corporal Noonan testified that Kelly had a significant inability to estimate time and that he observed Kelly's body swaying forward to backward about an inch. Corporal Noonan further testified that Kelly was unable to successfully perform the finger-to-nose test on the first try, and that she did not tilt her head back as far as requested, but was able to perform that test on five subsequent attempts. In light of the substantial testimonial evidence of Kelly's impairment, the admission into evidence of the results of the HGN test was harmless error. We find that the observations by Officer Meek and Corporal Noonan of the scene of the accident, of Kelly, and of Kelly's performance on the other field sobriety tests, established a sufficient independent basis for the verdict. **See Miller**, **supra**.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 05/05/2020