J-A20002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| PETER J. MOORE | : | |
| | : | |
| Appellant | | No. 1375 MDA 2016 |

Appeal from the Judgment of Sentence August 2, 2016
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0003656-2014

BEFORE:  GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:　　　　　　**FILED OCTOBER 10, 2017**

Appellant, Peter J. Moore, appeals from the judgment of sentence entered in the York County Court of Common Pleas, following his jury trial convictions of aggravated assault and endangering welfare of children ("EWOC").[1]  We affirm.

In its opinions, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises the following issues for our review:

> THE TRIAL COURT ERRED WHEN IT ADMITTED PRIOR BAD
> ACTS EVIDENCE BECAUSE THERE WAS NO SUBSTANTIAL
> SIMILARITY OR LOGICAL CONNECTION BETWEEN THE

---

[1] 18 Pa.C.S.A. §§ 2702(a)(8) and 4304(a)(1), respectively.

PROFFERED TESTIMONY AND THE CURRENT INCIDENT IN ORDER TO JUSTIFY ADMISSION UNDER PA.R.E. 404(B).

THE TRIAL COURT ERRED WHEN IT ADMITTED PRIOR BAD ACTS EVIDENCE BECAUSE THE PROBATIVE VALUE OF THE PROFFERED EVIDENCE DID NOT [OUTWEIGH] ITS PREJUDICIAL EFFECT TO JUSTIFY ADMISSION.

THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S REQUEST FOR A MISTRIAL AFTER A COMMONWEALTH WITNESS TESTIFIED TO A PRIOR ADMISSION OF ABUSE NOT PART OF THE PLEA TO A CONVICTION THE COMMONWEALTH SOUGHT TO ADMIT UNDER PA.R.E. 404(B).

(Appellant's Brief at 4).

The admissibility of evidence is a matter within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. **Commonwealth v. Drumheller**, 570 Pa. 117, 135, 808 A.2d 893, 904 (2002), *cert. denied*, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003) (quoting **Commonwealth v. Stallworth**, 566 Pa. 349, 363, 781 A.2d 110, 117 (2001)). In this context:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

**Commonwealth v. Reese**, 31 A.3d 708, 716 (Pa.Super. 2011) (*en banc*).

After a thorough review of the record, the briefs of the parties, the

applicable law, and the well-reasoned opinions of the Honorable Michael E. Bortner, we conclude Appellant's issues on appeal merit no relief. The trial court opinions comprehensively discuss and properly dispose of the questions presented. (**See** Opinion is Support of Order, filed June 23, 2015, at 2-8; Trial Court Opinion, filed December 9, 2016, at 11-14) (finding: **(1-2)** Appellant's guilty plea in connection with 2003 shaking incident provided substantial evidence of prior bad act; also substantial similarities existed between current case and 2003 incident; specifically, both victims were Appellant's infant sons and required hospitalization due to injuries, both incidents occurred at Appellant's home when Appellant was only adult present, and Appellant attributed both victims' injuries to "accidental" falls; additionally, 2003 incident was not too remote, in light of Appellant's incarceration time between two cases; further, probative value of 2003 incident outweighed prejudicial effect, due to current victim's inability to explain cause of his injuries; 2003 incident was necessary to prove Commonwealth's current case beyond reasonable doubt; court can and did issue cautionary instruction to overcome any undue prejudice caused by introduction of evidence pertaining to 2003 incident; **(3)** Commonwealth did not specifically attempt to elicit fleeting reference to second shaking incident in 2003, which was not part of Appellant's 2003 guilty plea; additionally, accidental reference to second shaking incident was not overly prejudicial, because jury viewed reference as part of single 2003 shaking incident;

further, passing mention of second 2003 shaking incident was not determinative in light of substantial testimony at jury trial, which included Appellant's admission to 2003 shaking incident; under these circumstances, inadvertent reference to second shaking incident in 2003, did not deprive Appellant of his right to fair trial; thus, court properly denied Appellant's request for mistrial). Accordingly, we affirm on the basis of the trial court's opinions.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/2017

IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH          :         NO. CP-67-CR-0003656-2014

                           :

      v.                  :

                           :

PETER J. MOORE,         :

      Defendant       :

COUNSEL OF RECORD:

Stephen R. McDonald, Esquire          Joseph D. Caraciolo, Esquire
Counsel for the Commonwealth          Counsel for the Defendant

## OPINION IN SUPPORT OF ORDER

On July 17, 2014, the Commonwealth filed a Motion in Limine. A Hearing was held

on that motion on December 3, 2014. After consideration of all evidence, argument, and case

law, this Court has Granted the Commonwealth's motion and now issues this Opinion in

Support of that Order.

I.    **Motion in Limine**

The Commonwealth seeks to introduce evidence of the Defendant's 2003 convictions

for child abuse wherein his, then, three month old son was the victim. In the 2003 case, the

Defendant entered pleas of guilty to Aggravated Assault, Simple Assault, Recklessly

Endangering another Person, and Endangering the Welfare of a Child. The Defendant also

plead *nolo contendere* to Criminal Attempt Homicide.

1

When Commonwealth seeks to admit past crimes, "[t]he general rule is that evidence of past crimes is inadmissible to prove that the defendant committed the crime with which he is presently charged. *Commonwealth v. Donahue*, 549 A.2d 121, 125 (Pa. 1988). There are, however, exceptions, which our Supreme Court, in *Commonwealth v. Donahue*, neatly summated as follows:

> [E]vidence of other crimes *is* admissible when it tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial—in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. [Citation omitted.] When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value. [Footnote omitted.]

*Id.* (quoting *Commonwealth v. Clayton*, 532 A.2d 385 (Pa. 1987) (citing *Commonwealth v. Rose*, 396 A.2d 1221 (Pa. 1979) (citation omitted)) (emphasis added). The *Donahue* Court stated that because the proposed evidence, in that case, was admissible as tending to prove the absence of mistake or accident, they did not need to examine Commonwealth's other proposed use of the evidence to show motive. *Id.* at 126. Similarly, we only address the absence of mistake or accident theory of admissibility as we believe it is firm grounds for admission of the proposed evidence of past child abuse.

The absence of mistake or accident theory is based upon the doctrine of chances. *Id.* In plain words, at some point, the repetition of similar events is less attributable to

2

coincidence and is more indicative of a blameworthy state of mind. The *Donahue* Court makes use of a bookkeeper analogy in which it is likely innocent happenstance where a bookkeeper twice errs in his favor in instances ten years apart; however, ill intent is fairly demonstrated by a bookkeeper who makes multiple errors in his favor in the same year and in the same ledger. *Id.* at 126-27.

For evidence of prior abuse to come in under the absence of mistake or accident theory, Commonwealth must establish that there is substantial evidence of the prior criminal act *and* that there is adequate similarity between the two cases. *Id.* at 127. As the Defendant entered pleas in the earlier case, it is axiomatic that the Commonwealth can establish substantial evidence of the prior child abuse. Ergo, we are left to examine whether there is adequate similarity between the 2003 case of child abuse and the incident *sub judice*.

At the preliminary hearing, it was established that the mother of the victim, Lisa Moore, was out shopping at the time of the incident. (Notes of Preliminary Hearing, 6/2/14, at 4.) At some point after her return, Lisa noticed that there was something wrong with the victim. (N.P.H., 6/2/14, at 5-6.) Lisa inquired of the Defendant, who had been watching the children, how the kids were during her absence. (N.P.H., 6/2/14, at 6.) The Defendant informed Lisa that he had been retrieving ice from the freezer when he heard the children fall and cry. (N.P.H., 6/2/14, at 9.) Lisa testified that the Defendant told her that "by the time he closed the freezer door, [the elder of the two children] was already in the process of getting up off of [the victim]. *Id.* Unable to ascertain what was wrong with the victim, the decision

3

was made to seek out medical attention. (N.P.H., 6/2/14, at 13.) Testimony was taken from Doctor Lori Frasier as an expert witness. (N.P.H., 6/2/14, at 33.) Doctor Frasier had examined the victim and reviewed his records. *Id.* Doctor Frasier testified that the victim had fractures to his lower legs known as torus fractures or buckle fractures. (N.P.H., 6/2/14, at 34-35.) Doctor Frasier stated that the injuries could not have occurred in the manner described by the Defendant and that, in her expert opinion, they were evidence of child abuse. (N.P.H., 6/2/14, at 36.)

Trusting in the verity of the representations Commonwealth has made regarding the 2003 incident of child abuse, we have no doubt that any information that might lead to a reconsideration of our analysis will be brought to our attention by either of the parties. With this in mind, in the Commonwealth's motion we are informed that both the 2003 victim and the victim in our present case were the Defendant's infant sons at the times of their respective injury. (Commonwealth's Motion, 7/17/14, at unnumbered 5-6.) Each incident occurred at the Defendant's home and while he was the only adult present. (Commonwealth's Motion, 7/17/14, at unnumbered 6.) Both incidents involved injury requiring hospitalization. *Id.* At the time of the 2003 incident, the Defendant made similar claims that he was not the cause of the injuries and that, rather, the injuries were caused by an accidental fall. *Id.* Most striking is the identical claim the Defendant initially made in the 2003 case that the victim received his injuries from a fall. Based upon the Commonwealth's representations, we believe there is adequate similarity between the incidents.

4

Having found that there is substantial evidence of the prior criminal act *and* that there is adequate similarity between the two cases, our only other concern is the length of time between the incidents. The amount of time from the 2003 incident until the current incident, which occurred in 2014, amounts to more than a decade. Granted, length of time between the prior bad act and the current accusation does not appear, from our research, to be an issue when admitting evidence of past crimes under the absence or accident exception. However, the *Donahue* Court addressed this concern and so shall we.

The *Donahue* case instructs us that we are to consider the remoteness in time of the prior criminal act that Commonwealth seeks to admit. 549 A.2d 121, 127-28 (Pa. 1988). In *Donahue*, the issue was addressed but summarily dismissed as there were but three years between the incidents. *Id.* at 128. The *Donahue* Court implies that there may be instances wherein a prior crime is too remote in time to come in against a defendant in a present matter. *Id.* We repeat that, while our research seems to indicate that temporal issues are reserved for exceptions other than absence of mistake or accident, the *Donahue* Court instructs us that we should consider the remoteness of the proffered prior criminal act. In *Commonwealth v. Smith*, which dealt with the common plan exception, we find that, "'if the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of evidence unless the time is excessive.'" 635 A.2d 1086, 1090 (Pa. Super. Ct. 1993) (quoting *Commonwealth v. Frank*, 577 A.2d 609, 614 (Pa. Super. Ct. 1990)). In *Smith*, the incidents were found to be so similar

5

that a period of ten to twenty years separating them was not considered excessive. *Id.* In *Commonwealth v. O'Brien*, which, again, deals with the common plan exception but provides guidance on the remoteness question, the Superior Court excluded the time the defendant had spent incarcerated from their analysis of remoteness. 836 A.2d 966, 971 (Pa. Super. Ct. 2003) (citing *Commonwealth v. Rush*, 646 A.2d 557 (Pa. 1994)). Commonwealth has informed this Court that the Defendant, "was incarcerated for the large majority of the time period between the first and second incident." (Commonwealth's Motion, 7/17/14, at unnumbered 5.) We have found that there is substantial evidence of the prior criminal act *and* that there is adequate similarity between the two cases. We also find that the prior criminal act was not so remote in time as to preclude its admission. The final consideration before admitting evidence of the 2003 incident is to weigh whether the prejudicial effect is greater than the probative value of the proffered evidence.

We remember that, "[w]hen the evidence is relevant and important to one of . . . [the exceptions], it is generally conceded that the prejudicial effect may be outweighed by the probative value. *Commonwealth v. Donahue*, 549 A.2d 121, 125 (Pa. 1988). (citations omitted)) (emphasis added). The probative value is clearly present. The question is whether the prejudicial effect is greater and, in our estimation, it is not.

In *Commonwealth v. Gordon*, our Supreme Court stated that:

Whether relevant evidence is unduly prejudicial is a function in part of the degree to which it is necessary to prove the case of the opposing party. Here, the Commonwealth was required to prove that a non-consensual touching

6

occurred, the purpose of which was sexual gratification. [footnote omitted] Gordon denies that the touching occurred, and since the uncorroborated testimony of the alleged victim in this case might reasonably lead a jury to determine that there was a reasonable doubt as to whether Gordon committed the crime charged, it is fair to conclude that the other crimes evidence is necessary for the prosecution of the case.

673 A.2d 866, 870 (Pa. 1996). As the victim in our present case was an infant at the time of the alleged incident and is therefore incapable of offering even uncorroborated testimony then it is even more necessary for the Commonwealth to be allowed to avail itself of prior bad acts evidence than was the case in *Gordon*.

It could be argued that Commonwealth will be able to present the testimony of at least one expert witness who, aside from reputation and ego, is a disinterested party to the events. That, in other words, this is not the he-said she-said situation in *Gordon*; but, rather, this is a defendant-says victim's-treating-physician says situation and evidence of the 2003 incident is unnecessary for Commonwealth to prove their case. The flaw with such a line of thinking is that it ignores the purpose of the exceptions. As the *Gordon* Court stated, "[w]ithout doubt, the other crimes evidence would be prejudicial to Gordon[;]" however, "[t]hat is what it is designed to be." *Id.* And just as the *Gordon* Court felt that Commonwealth required evidence of prior bad acts to show motive, intent, absence of mistake or accident, and a common scheme or plan, *Id.*, we believe Commonwealth needs the evidence of the Defendant's 2003 bad acts to prove their case beyond a reasonable doubt in the instant case. As such, evidence regarding the Defendant's prior incident involving child abuse is admissible to show an

7

absence of mistake or accident.

In order to overcome any undue prejudice that might result from our admission of the prior bad acts evidence, we believe a cautionary instruction will be necessary. In *Commonwealth v. Sherwood*, the Court noted that a cautionary instruction was proper when prior bad acts had been admitted. 982 A.2d 483, 497 (Pa. 2009) (citing *Commonwealth v. Claypool*, 495 A.2d 176, 179-180 (Pa. 1985)); see also *Commonwealth v. Smith*, 635 A.2d 1086, 1090 (Pa. Super. Ct. 1993).

## II.    Conclusion

For the reasons stated above, the Court hereby Grants the Commonwealth's Motion in Limine.

BY THE COURT,

DATED: June 23 , 2015

MICHAEL E. BORTNER, JUDGE

8

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

**COMMONWEALTH**
    **Appellee**      :

     :

     :      **NO. CP-67-CR-0003656-2014**

**v.**      :

     :

**PETER J. MOORE,**      :

    **Defendant/Appellant**      :

COUNSEL OF RECORD:

Stephen R. McDonald, Esquire      Anthony J. Tambourino, Esquire
Counsel for the Commonwealth      Counsel for Defendant

## OPINION IN SUPPORT OF ORDER PURSUANT TO RULE 1925(a) OF THE RULES OF APPELLATE PROCEDURE

The Court received a Notice of Appeal, docketed on August 22, 2016, that Peter J.

Moore, by and through his counsel, appeals to the Superior Court of Pennsylvania the Order

entered in his case on August 2, 2016. The Court has reviewed the record. The Court now

issues this Opinion in support of the Judgment of Sentence.

## I. Procedural History

The pertinent history of this case is as follows. Via an Information filed on July 1,

2014, the Appellant was charged with Aggravated Assault—Victim Less Than 13 and

Defendant 18 or Older, Aggravated Assault—Victim Less Than 6 and Defendant 18 or

Older, and Endangering Welfare of Children—Parent/Guardian. On July 17, 2014, the

Commonwealth docketed their Commonwealth's Motion in Limine to Present Evidence of

Prior Crimes Under Rule of Evidence 404(b). A Hearing on this motion was set for October

29, 2014 and was rescheduled for December 3, 2014. At the conclusion of the December 3, 2014 Motion in Limine Hearing, the Court reserved its decision and ordered briefs to be filed. After much consideration, the Court issued an Order and Opinion granting the Commonwealth's Motion in Limine on June 23, 2015.

Trial was delayed due to Hearings being held on September 3 and September 28 of 2015 to address issues regarding the payment of a defense expert. These issues were resolved on October 6, 2015 and the case was listed for trial. The trial was further delayed by status hearings to determine the progress of the Appellant's expert in generating reports. On March 3, 2016 it was determined that all of the Appellant's reports had been provided to the Commonwealth and trial was scheduled to begin May 16, 2016.

On May 19, 2016, a jury found the Appellant guilty of Counts 2 and 3, which were, respectively, Aggravated Assault—Victim Less Than 6 and Defendant 18 or Older and Endangering Welfare of Children—Parent/Guardian. The jury acquitted the Appellant of Count 1 Aggravated Assault—Victim Less Than 13 and Defendant 18 or Older. Sentencing was held on August 2, 2016. On Count 2, the Appellant was sentenced to two and one-half to five years of incarceration plus costs and on Count 3, the Appellant received a consecutive sentence of one and one-half to three years of incarceration with attendant costs.

On August 22, 2016, the Appellant filed a timely Notice of Appeal. On August 25, 2016, pursuant to the Pennsylvania Rules of Appellate Procedure, Rule 1925(b), the Appellant was directed to file a statement of matters complained of. Following our grant of

2

Appellant's request to allow trial counsel, Joseph D. Caraciolo, to withdraw, the Office of the Public Defender of York County entered their appearance on September 14, 2016. On September 15, owing to necessary transcripts not having been docketed, Appellant's counsel requested and was granted an extension of time to file the Appellant's Statement of Matters complained of until October 17, 2016. As Appellant's counsel only received the transcripts on October 14, 2016, a second request to extend the filing of Appellant's Statement of Matters Complained of was made on October 17, 2016. The Appellant was granted until November 18, 2016 to file the Appellant's Statement. On November 18, 2016, the Appellant filed his Statement of Errors Complained Pursuant to Pa.R.A.P. 1925(b).

The Appellant appeals for the following reasons. Firstly, Appellant complains this Court erred in admitting the hearsay testimony of Laurynn Kauffman where no exception exists for hearsay statements relating to Pa.R.E. Rule 404(b) testimony. Secondly, Appellant believes we erred in admitting evidence of prior bad acts under Pa.R.E. Rule 404(b) because there was no substantial similarity or logical connection between the prior bad act and the acts which gave rise to this case. Thirdly, the Appellant believes the probative value of the prior bad acts was outweighed by prejudicial effect. Fourth, the Appellant alleges that it was error to deny his request for a mistrial after a Commonwealth witness testified to prior abuse for which the Appellant had not plead guilty. Fifth, and finally, the Appellant states that we erred in instructing the jury on the "exclusive custody doctrine," which he avers was unwarranted and prone to confuse the jury.

3

## II. **Facts**

The victim's mother, Lisa Moore, testified that on the day in question, March 8, 2014, she awoke and the day began as it normally does. (Notes of Testimony, 5/16/16, at 131-33.) Lisa went shopping for one to one-and-a-half hours. *Id.*, at 133. Upon Lisa's return, she noticed that her son, the victim, was fussy. *Id.*, at 134. The Appellant informed Lisa that the kids had been playing, that the Appellant was fetching some ice from the refrigerator, that the freezer door obscured his view of the children, that he heard a commotion, and that when the Appellant looked towards the noise he saw the victim on his back with toys under and around him and his step-daughter Samantha atop of the victim. *Id.*, at 136-37.

Lisa testified that Samantha has Autism and Attention Deficit Hyperactivity Disorder. *Id.*, at 157. Lisa described how Samantha can be violent and that Samantha is strong. *Id.*, at 158-59. The scope of Samantha's violence was described along with some of the injuries she has inflicted on others. *Id.*, at 159-61. The jury then viewed videos of Samantha manifesting her strength and rage and some of the steps required to restrain her. *Id.*, at 169, 172. Lisa's testimony was later buttressed by Dianna Falkenstein, a defense witness, who, having worked as a therapeutic support staffer with the family, described Samantha's strength and proclivity for outbursts. *Id.*, at 451-53. Lisa also provided the jury with the genesis of how this case came to the attention of authorities when she informed the jury that, as the victim continued to fuss, the victim was taken to Hershey Medical Center. *Id.*, at 141-43.

4

Doctor Lori Frasier took the stand and testified that she was involved in the victim's diagnosis and treatment. *Id.*, at 207. Doctor Frasier was qualified as an expert in radiology, pediatrics, and child abuse. *Id.*, at 219. The jury heard that the victim suffered a particular kind of transverse fracture called a torus or buckle fracture, which is a fracture that occurs longitudinally through the legs. *Id.*, at 225-26. Doctor Frasier testified that the force of the injury had to come up from below as though through the foot. *Id.*, at 227. Doctor Frasier opined that the injury was odd because it was bilateral (affecting both legs) and that this was unusual for accidents involving a young child as great force is necessary and children are not coordinated enough to land on both feet equally. *Id.*, at 228-29. The fact that both of the victim's fibulas and tibias were injured added to Doctor Frasier's belief that the forces involved in creating the injury were greater than would be expected from a fall, or another child jumping onto the victim, or from someone dropping the victim. *Id.*, at 238. Doctor Frasier testified that, "[i]n [her] opinion, there was nothing that supported an accidental mechanism [for this injury]." *Id.*, at 239. Rather, in her expert opinion, Doctor Frasier found the injuries to be indicative of child abuse. *Id.*, at 246.

The defense offered Doctor Jeffrey Bomze to be qualified as a medical expert, which the Court did. *Id.*, at 355. Doctor Bomze noted that *only* Doctor Frasier called the injuries that were sustained by the victim buckle fractures. *Id.*, at 363. Other doctors who were involved in the victim's treatment, including the radiologist, described horizontal fractures. *Id.* As opposed to the vertical force necessary to induce buckle fractures, horizontal fractures

5

result from perpendicular force applied to the long axis of a bone. *Id.*, at 363-64. Doctor Bomze described for the jury numerous accidental mechanisms that he believed were potential causes for the victim's injuries. *Id.*, at 388-89.

A Detective Jarrett Boyles was tasked with investigating the case *sub judice* and he reported to the hospital to initiate the investigation. *Id.*, at 301-02. There, Detective Boyles recorded an interview with the Appellant, which was played for the jury. *Id.*, at 304-05. Detective Boyles also testified that no investigation of the scene occurred because the victim's family was uncooperative and because Doctor Frasier did not feel it was necessary. *Id.*, at 309.

Laurynne Kauffman took the stand and testified that she is the Appellant's former wife. *Id.*, at 280. Laurynne stated that she and the Appellant have a son named Brian who was born on March 17, 2003. *Id.*, at 281. On June 23, 2003, Laurynne attended a class and left Brian in the care of the Appellant. *Id.* Laurynne later received a call informing her that Brian was on the way to the hospital. *Id. Id.*, at 281-82. The Appellant maintained to Laurynne that Brian had fallen from the couch. *Id.*, at 283. Later, Laurynne was taken to a room with medical staff or police investigators, which participants she cannot remember, and, therein, the Appellant admitted to her that he had shaken Brian. *Id.*, at 285. The investigating officer in that 2003 case was Detective, now Chief, Loper. *Id.*, at 292. Chief Loper testified that despite initially denying any wrongdoing, the Appellant eventually admitted to shaking Brian on two occasions. *Id.*, at 295-296.

6

The Appellant took the stand and addressed much of what had already been testified to during the trial. The crux of his testimony was addressed by his denial of harming the victim on the day in question. *Id.*, at 521-22.

## III.    Matters Complained of on Appeal

### A. Rule 404(b)

#### 1. *Testimony of Laurynn Kauffman*

The Appellant's first matter complained of is that this Court erred in admitting the testimony of Laurynn Kauffman because her testimony was hearsay offered for the truth of the matter asserted and Rule 404(b), under which that testimony was admitted, does not excuse hearsay requirements. To begin, Pennsylvania law requires that an appellant must specify where within the certified record the challenged testimony appears or else the issue is waived. *Commonwealth v. Shotwell*, 717 A.2d 1039, 1042 (Pa. Super. Ct. 1998) (citing *Commonwealth v. Gray*, 608 A.2d 534, 544 (Pa. Super. Ct. 1992) (citing Pa.R.A.P.2119(c))). Appellant's Statement of Errors Complained of does include a reference to page 282 of the trial transcript. Unfortunately, the Court cannot be certain whether the supposed hearsay refers to *all* of Ms. Kauffman's testimony or the specifically objected to testimony regarding a friend of Ms. Kauffman's, Bethany, who informed Ms. Kauffman that Brian was on his way to the hospital. As the objection at trial related to Ms. Kauffman's testimony recounting Bethany's words, we begin our analysis there.

The portion of the transcript that is relevant to this matter complained of reads in

7

whole:

[Attorney McDonald questioning Ms. Kauffman:]

Q.    Now, did something happen while you were at class?

A.    Yes.

Q.    What happened?

A.    What I was told happened?

Q.    How did you find out something had happened?

A.    I got a call from my girlfriend who had picked up Bethany, and she told me that - -

Attorney Caraciolo: Objection, Your Honor. Hearsay.

Attorney McDonald: Your Honor, this isn't for the truth of the matter. This is just to - - this is course of conduct.

The Court: I'm going to Overrule.

By Attorney McDonald:

Q.    She told you that what?

A.    That Brian was on his way to the hospital.

(N.T., 5/16/16, at 282.) From our review of the transcript, this seems to include *all* of the testimony Ms. Kauffman offered about what Bethany told her.

*Ab initio*, "[t]he Admission or exclusion of evidence is a matter for the sound discretion of the trial judge." *Commonwealth v. Shotwell*, 717 A.2d 1039, 1042 (Pa. Super. Ct. 1998) (citing *Commonwealth v. Stringer*, 678 A.2d 1200, 1202 (Pa. Super. Ct. 1996).

8

"[H]earsay is an out of court statement offered to prove the truth of the matter asserted." *Id.* (citing *Commonwealth v. Ellis*, 700 A.2d 948, 960 (Pa. Super. Ct. 1997) (citation omitted)). "Certain out-of-court statements offered to explain a course of conduct are admissible as an exception to the hearsay rule as these statements are not offered for the truth of the matters asserted; they are offered to show information upon which the police acted." *Id.* This is referred to as the "police conduct rule" and it, "does not open the door to unbounded admission of testimony, **for such would nullify an accused's right to cross-examine and confront the witnesses against him**." *Commonwealth v. Dent*, 837 A.2d 571, 579 (Pa. Super. Ct. 2003) (citing *Commonwealth v. Palsa*, 555 A.2d 808, 811 (Pa. 1989)) (emphasis in original); See also *Commonwealth v. Carroll*, 513 A.2d 1069, 1071 (Pa. Super. Ct. 1986). In our review of case law, the course of conduct exception to the hearsay rule does not appear to be limited only to the conduct of police; but, rather, is applicable to the testimony of any witness. "It is well settled that an out-of-court statement offered to explain a course of conduct is not hearsay." *Commonwealth v. Lewis*, 460 A.2d 1149, 1152 (Pa. Super. Ct. 1983) (citing *Commonwealth v. Cruz*, 414 A.2d 1032 (Pa. 1980); *Commonwealth v. Ryan*, 384 A.2d 1243 (Pa. Super. Ct. 1978)) (A victim's testimony that another tenant told her about a suspicious man peering into homes and who suggested the victim observe whether he was the man who had raped the victim was admissible hearsay under the course of conduct exception.).

In addition to the foregoing, we note that even if a court incorrectly admits hearsay

9

evidence, a verdict will not be disturbed if the hearsay amounts to harmless error.

*Commonwealth v. Hardy*, 918 A.2d 766, 777 (Pa. Super. Ct. 2007) (citing *Commonwealth v. Dent*, 837 A.2d 571, 582 n. 2 (Pa. Super. Ct. 2003). An error is harmless under any of the following circumstances:

> (1) the prejudice to the appellant was nonexistent or *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted, substantially similar and properly admitted evidence; or (3) the properly admitted and uncontradicted evidence was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Id.*

The extent of testimony elicited from Ms. Kauffman about her friend Bethany was that Bethany had informed Ms. Kauffman that Ms. Kauffman and the Appellant's son, Brian, was then on his way to the hospital. We believe this is firmly within the exception offered by the Commonwealth at trial and, even if it is not, we believe that it would be of such *de minimis* prejudice as to have been harmless and we would, therefore, respectfully request affirmance as to this matter complained of.

If the Appellant is asserting that Ms. Kauffman's testimony was, *in toto*, impermissible hearsay then we must opine, in the alternative, that her testimony was cumulative at worst and, still, subject to the course of conduct exception. A basic synopsis of Ms. Kauffman's testimony was that her son was injured, the Appellant related that Brian had fallen from a couch, and that, eventually, the Appellant admitted to Ms. Kauffman that he had shaken Brian. (N.T., 5/16/16, at 281-85.) This aligned with Detective Loper's testimony

10

that the Appellant admitted, after initially denying it, that he had shaken Brian. *Id.*, at 295-96. While we must admit that cumulative evidence has a tendency to bolster other evidence, we do not believe that the hearsay testimony proffered by Ms. Kauffman amounted to anything more than her recounting of what led her to arrive at the hospital and how the 2003 case progressed. As such, we humbly request affirmance as to this matter complained of.

2. *Admission of Prior Bad Acts*

In the interest of judicial economy, the Appellant's second and third matters complained of are best addressed together. The second matter complained of is that it was error to admit evidence of the Appellant's 2003 conviction for child abuse because there was no substantial similarity or logical connection between that incident and the current one. The third matter complained of is that this Court erred in admitting evidence of the Appellant's 2003 conviction for child abuse because the probative value of that instance did not outweigh its prejudicial effect. Our June 23, 2015 Opinion in Support of Order delves into our reasoning for admitting evidence of the Appellant's 2003 conviction into the trial for the present case. Based upon the reasoning therein, we pray for affirmance as to these two matters complained of. .

3. *Denial of Mistrial*

In his fourth matter complained of, the Appellant contends that we erred in denying a mistrial after Chief Loper referenced a second incident in which the Appellant abused his son in the 2003 case, which we admitted under Pa.R.E. 404(b) and for which we supplied our

11

reasoning in the Opinion in Support of Order filed on June 23, 2015. (N.T., 5/16/16, at 295-96.) We turn first to the testimony in question.

The objectionable portion of testimony was as follows:

[Attorney McDonald questioning Chief Loper]

A. . . . So we went through that a couple of times, and it just wasn't making sense, so I confronted him with the medical evidence, and, at that point, Mr. Moore then broke down, started crying, and actually admitted to shaking his son, actually, on two different occasions. Once was that Monday where the ambulance was called, and one was the Friday just prior to that, a couple days earlier, he did the same thing.

Q. And this version of events that he originally told you about the child rolling off, that he put the child on the couch, went into the kitchen to make a bottle, and the child rolled off the couch, was that what he had told -- to your understanding, is that what he told the ambulance?

A. Yeah. That was the story that he -- the version of events, I should say, that he told the ambulance that day, the medical personnel at the hospital, and then initially what he had said to me.

Q. All right. And then you said that he admitted that he had also injured the baby on the previous Friday?

A. Correct.

Q. Were there any injuries suffered in that instance?

12

A. There appeared to be injuries. One of the things that the hospital told me was that there were some injuries that they noted that were in the healing stages.

(N.T., 5/16/16, at 295-96.) Attorney Caraciolo made a timely objection, which resulted in a sidebar discussion and the requested mistrial whose denial gives rise to this matter complained of. *Id.*, at 297-99.

In *Commonwealth v. Parker*, the Superior Court laid out the standard for overturning the denial of a mistrial, which is as follows:

> The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion. A mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. Likewise, a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice.

957 A.2d 311, 319 (Pa. Super. Ct. 2008) (quoting *Commonwealth v. Rega*, 933 A.2d 997, 1016 (Pa. 2007)). "When the statement at issue relates to a reference to past criminal behavior, '[t]he nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required.'" *Id.* (quoting *Commonwealth v. Kerrigan*, 920 A.2d 190, 199 (Pa. Super. Ct. 2007)). And, "[a] singular, passing reference to prior criminal activity is usually not sufficient to show that the trial court abused its discretion in denying the defendant's motion for a mistrial." *Id.* (citing *Kerrigan, supra*, at 199; *Commonwealth v. Allen*, 292 A.2d 373, 375 (Pa. 1972)).

13

Turning to the facts of our case, a plain reading of the transcript does not reveal any obvious attempt by the Commonwealth to elicit information from Chief Loper regarding a second instance of the Appellant shaking his son in 2003. That said, it is noteworthy that the Commonwealth attempted to highlight this testimony in asking Chief Loper to repeat whether the victim in the 2003 incident suffered any injuries from the Friday shaking incident. (N.T., 5/16/16, at 296.) Nevertheless, the nature of the reference to the 2003 incident was not, to our mind, overly prejudicial in that we believe it appeared to the jury to have all been one incident. It bears reminding that we believe we correctly admitted evidence of the 2003 incident under Pa.R.E. 404(b). In the grand scheme of a case spanning hundreds of pages of transcripts, the fleeting mention by Chief Loper that the 2003 victim was shaken more than once was not determinative in the face of a jury having heard that the Appellant confessed to abusing his child in 2003. If there was any undue prejudice then it comes from there having been a prior conviction for child abuse and not from a few lines of testimony indicating that the abuse was not confined to a single incident. "A mistrial is an extreme remedy that is required only where the challenged event deprived the accused of a fair and impartial trial." *Commonwealth v Travaglia*, 28 A.3d 868, 879 (Pa. 2011) (citing *Commonwelath v. Laird*, 988 A.2d 618, 638 (Pa. 2010)). This was a passing reference to which the jury was already inured by virtue of our determination to allow in evidence of the 2003 plea and for that reason we beg affirmance.

14

B. Exclusive Custody Doctrine

The Appellant's fifth matter complained of is that the Court erred in instructing the jury on the "exclusive custody doctrine." The Appellant avers that this was unwarranted under the circumstances and could have only served to confuse the jury.

In general, "'[w]hen a court instructs the jury, the objective is to explain to the jury how it should approach its task and the factors it should consider in reaching its verdict.'" *Commonwealth v. Chambers*, 980 A.2d 35, 49 (Pa. 2009) (quoting *Commonwealth v. Hartman*, 638 A.2d 968, 971 (Pa. 1994)). And, "[i]nstructions on defenses or theories of prosecution are warranted when there is evidence to support such instructions." *Id.*, at 49-50 (citing *Commonwealth v. Browdie*, 671 A.2d 668 (Pa. 1996)). "A charge will be found adequate unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error." *Id.*, at 50 (citing *Von der Heide v. Com., Dep't of Transp.*, 718 A.2d 286, 288 (Pa. 1998)).

It is well established in Pennsylvania that, "[w]here, as here, an adult has sole custody of a child for a period of time, and, during that time the child suffers wounds which unquestionably are neither self-inflicted nor accidental, the evidence is sufficient to allow a jury to infer that the adult inflicted the wounds." *Commonwealth v. Paquette*, 301 A.2d 837, 840 (Pa. 1973) (citing *State v. Loss, Minn.*, 204 N.W.2d 404 (1973; *Commonwealth v. Johnson*, 29 A. 280 (Pa. 1894); *Commonwealth v. Lettrich*, 31 A.2d 155 (Pa. 1943)). Phrased differently,

15

> [i]n this jurisdiction we have held that where an adult is given sole custody of a child of tender years for a period of time, and, during that time the child sustains injuries which may have been caused by a criminal agency, the finder of fact may examine any explanation offered and, if they find that explanation to be wanting, they may reject it and find the person having custody of the child responsible for the wounds.

*Commonwealth v. Meredith*, 416 A.2d 481, 482-83 (Pa. 1980) (citing *Commonwealth v. Paquette, supra*).

The instruction to which the Appellant objects was added to our usual instruction on circumstantial evidence. The added language tracks the exclusive custody doctrine language cited above. Specifically, the jury was told the following:

> Now, in this case, the evidence indicates that the defendant had sole custody of the child during the time period in which the child sustained his injuries. You, as the finder of fact, may, but you are not required to, examine any explanation regarding the injuries being accidental or self-inflicted. If you determine that the explanation is insufficient, reject the explanation and infer the defendant inflicted the injuries.

(N.T., 5/16/16, at 596.) We would note that our prepared instruction, which was shared with counsel prior to our instructing the jury, reads ever so slightly differently from what the court reporter's transcript indicates the jury heard. The prepared instruction read as follows:

> In this case, the evidence indicates that the defendant had sole custody of the child during the time period in which the child sustained injuries. You, as the finder of fact, may examine any explanation regarding the injuries being accidental or self-inflicted, and if you determine that the explanation is insufficient, reject the explanation and infer the Defendant inflicted the injuries.

(N.T., 5/16/16, at 536-37.) We do not believe there was any material change that would have misled or confused the jury. The Commonwealth requested an instruction on their theory of

16

the case which was supported by the evidence adduced at trial and, therefore, we believe the instruction was warranted. For this reason, we deferentially seek affirmance.

## III.   Conclusion

Based upon the reasons stated above, this Court respectfully urges affirmance of the Order entered in this case on August 2, 2016.

BY THE COURT,

DATED: December 7ᵗʰ, 2016          MICHAEL E. BORTNER, JUDGE

17