J-A31001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSEPH J. COLLIER | : | |
| | : | No. 1022 EDA 2017 |
| Appellant | | |

Appeal from the Judgment of Sentence March 8, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008179-2016

BEFORE: PANELLA, J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JANUARY 04, 2018**

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following Appellant Joseph J. Collier's conviction at a bench trial on the charge of driving while under the influence of alcohol ("DUI"), 75 Pa.C.S.A. § 3802(a)(1). After a careful review, we affirm.

The trial court has set forth, in part, the procedural history underlying this appeal as follows:

> [Appellant] was charged by way of Bill of Information with [DUI]-second offense. These charges stemmed from an incident that occurred on October 28, 2014, during which Appellant['s vehicle] was stopped and [Appellant was] then arrested by a Pennsylvania state trooper after the trooper observed Appellant's vehicle fail to stay within its lane over a distance of a mile and [the trooper] observed indicia of intoxication.

_____

* Former Justice specially assigned to the Superior Court.

On August 11, 2016, following the grant of Appellant's motion to suppress the results of his blood/alcohol test, he was tried [in the] Municipal Court of Philadelphia. At the conclusion of the trial, the [Municipal Court] found Appellant guilty of the above offense. On September 7, 2016, [the Municipal Court] sentenced Appellant to [a] term of incarceration of five days to six months. Appellant thereafter sought a trial *de novo* in the Court of Common Pleas of Philadelphia County. The case was assigned. . .for trial, and on February 1, 2017, [Appellant proceeded to] a waiver trial[.]

Trial Court Opinion, filed 4/25/17, at 1-2.

At trial, the Commonwealth conceded that the results of Appellant's blood alcohol test had been previously suppressed, and the Commonwealth indicated it was presenting a sole witness, Trooper Michael Laurendeau.[1] N.T., 2/1/17, at 3-4. Trooper Laurendeau testified that, on October 28, 2014, he was working the midnight shift from 10:00 p.m. to 6:00 a.m. when, as part of his tour of duty, he traveled to the area where I-95 meets Columbus Avenue in Philadelphia. *Id.* at 5-6. The following exchange occurred on direct-examination between the assistant district attorney and Trooper Laurendeau as to what he observed at this location:

**Q:** Trooper, starting at the beginning, can you tell us what first brought your attention to [Appellant]?

**A:** I noticed a vehicle that was a white Dodge Ram van, traveling southbound down 95. I observed the vehicle [ ] make a few erratic movements, crossing not only out of its lane of travel into other adjacent lanes without using the changing lane signal, but also over into the shoulder.

**Q:** Trooper, how many times would you say [Appellant] crossed the solid white line?

_____

[1] Appellant presented no witnesses at trial.

- 2 -

**A:** I can't recall exactly how many. I do know that before he pulled off of the highway, he crossed the entire gore area.

**Q:** The entire what? Say that again.

**A:** The gore area. So it's the white lines that make a point before an off-ramp.

**Q:** So basically when you're going to the right to get off or going straight to the highway, it's that sort of "V" area?

**A:** Correct.

**Q:** So [Appellant] went into that area?

**A:** Correct.

**Q:** Tell us what happened next.

**A:** I followed him off of 95, onto Columbus Boulevard where I initiated a traffic stop on the vehicle and made contact with the operator of the vehicle, [Appellant], who is sitting next to counsel.

I let him know that the reason for the stop was for the erratic lane movements. He told me that he was eating a granola bar, and that's why he swerved out of his lane several times.

I let him know that I smelled a heavy scent of alcohol emanating from the vehicle, and asked if he would step out of the vehicle to perform a series of standardized field sobriety tests, to which he agreed.

Upon speaking to [Appellant] outside of the vehicle, I continued to notice a heavy odor of alcoholic beverages coming from his person and breath. His pupils were dilated and glassy.

At that point I ran through HGN, which is horizontal gaze nystagmus, which he showed all signs of impairment. I asked him if he was able to perform the walk and turn and the one-legged stand. He told me that due to an ankle injury, he wouldn't be able to perform either test.

At that time[,] I believed him to be under the influence of alcohol, [and] I placed him under arrest. And I went to the PDU where he consented to a blood draw.

**Q:** Trooper, I will stop there. Trooper, around what time in the morning was this when you made all of these observations?

**A:** I can't recall the exact time. I want to say it was around 2 o'clock in the morning.

**THE COURT:** At 2:00 a.m.?

- 3 -

**THE WITNESS:** Yeah, some time around there.

**Q:** What about 1:20 in the morning?  Does that sound about right?

**A:** Yes.

**Q:** Trooper, can you tell us, you said the only test you were able to conduct was the field sobriety test—the HGN test.  Can you tell us exactly what the test is and how you know that it indicated a sign of impairment?

**[DEFENSE COUNSEL]:** Objection.

**THE COURT:** Overruled.

**[DEFENSE COUNSEL]:** It's not admission [*sic*] under Commonwealth vs. Stringer.[2]

**Q:** Can you tell us about that?

**A:** What the HGN test is, is it's horizontal gage [sic] nystagmus.

**THE COURT:** It's what?

**THE WITNESS:** Horizontal Gaze Nystagmus.  [I]t is [ ] an involuntary jerking of the eye, which is caused by impairment.  He showed all signs, which is maximum deviation, which is all the way out to the shoulders 108 degrees, prior to 45, which is at the shoulder, and also the lack of smooth pursuit.

**Q:** So the lack of smooth pursuit and onset before 45 degrees; is that right?

**A:** Correct.

---

2 In **Commonwealth v. Stringer**, 678 A.2d 1200, 1201-02 (Pa.Super. 1996), this Court held the following:

> HGN test results have been deemed scientific evidence based on the scientific principle that alcohol consumption causes nystagmus.  Therefore, an adequate foundation must be presented prior to admission of HGN test results.
> ***
> Admissibility of the evidence depends upon the *general* acceptance of its validity by those scientists active in the field to which the evidence belongs [.]

(citations and quotation omitted) (italics in original).

**Q:** So, basically, this is the test where you take the finger and his eyes tick as you basically go out and around his peripheral vision; is that fair?

**A:** Yes.

**Q:** You said that [Appellant] said that he couldn't do the one-legged stand or the walk and turn, the second and third of the three tests because of an ankle injury. Did you notice visibly anything wrong with his ankle that evening?

**A:** No.

**Q:** That's all I have.

*Id.* at 6-10 (footnote added).

On cross-examination, Trooper Laurendeau clarified that, as he followed Appellant's vehicle, he saw the vehicle touch the line "a few times and it was not only into an adjacent lane, but also into the shoulder." *Id.* at 11. The trooper indicated he observed the vehicle actually go onto the shoulder of the road. *Id.* Further, he indicated that he observed Appellant's vehicle drive over the gore area (where the shoulder meets and comes to a point) when Appellant exited onto Washington Avenue. *Id.* at 12. Trooper Laurendeau admitted that Appellant was cooperative, he did not stumble, his clothes were tidy, and Appellant seemed to understand the conversation. *Id.* at 14.

The following relevant exchange occurred between the trooper and the trial court:

**THE COURT:** You said he had a strong smell of alcohol?
**THE WITNESS:** Correct.
**THE COURT:** How did his eyes appear?
**THE WITNESS:** His pupils were dilated and glassy. I also noticed that he had glitter on his face. I didn't know where that came from.

**THE COURT:** How long do you think you were behind him on Washington, going on the shoulder?

**THE WITNESS:** At least a mile.

**THE COURT:** A mile?

**THE WITNESS:** At least a mile.

*Id.* at 15.

At the conclusion of the testimony, the trial court convicted Appellant of DUI under Subsection 3802(a)(1), and following a sentencing hearing on March 8, 2017, noting this was Appellant's second DUI offense, the trial court sentenced Appellant to five days to ten days in prison, to be followed by six months' probation. This timely appeal followed, and all Pa.R.A.P. 1925 requirements have been met.

Appellant argues that the trial court erred in admitting Trooper Laurendeau's testimony regarding Appellant's performance on the HGN test because the Commonwealth did not establish an adequate scientific foundation.[3] In this regard, he suggests that Trooper Laurendeau's testimony that Appellant's involuntary jerking of the eye was caused by impairment "has no foundation in science to back [it] up." Appellant's Brief at 11. Further, he avers the trial court's error in this regard does not constitute "harmless error."

In reviewing challenges to the trial court's evidentiary rulings, our standard of review is as follows:

---

[3] Appellant adequately preserved his claim by making a proper objection at trial. **See** Pa.R.E. 103(a)(1).

[T]he admissibility of evidence is a matter addressed to the sound discretion of the trial court and. . .an appellate court may only reverse upon a showing that the trial court abused its discretion. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law.

*Commonwealth v. Cox*, 115 A.3d 333, 336 (Pa.Super. 2015) (*en banc*) (quotations omitted).

Further, if

it is determined that the trial court erred in admitting the evidence, the inquiry becomes whether the appellate court is convinced beyond a reasonable doubt that such error was harmless. Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Robinson*, 554 Pa. 293, 721 A.2d 344, 350 (1998) (citations omitted). "The Commonwealth bears the burden to prove beyond a reasonable doubt that the error did not contribute to the verdict." *Commonwealth v. Jacoby*, ____ Pa. ____, 170 A.3d 1065, 1085 (2017) (citation omitted).

As Appellant suggests on appeal, this Court, noting that case authority prohibits evidence based on scientific principles without a showing that the methodology is generally accepted by experts in the field to which the principle belongs, has held that the "HGN test rests on the belief that the consumption of certain substances increases a rapid involuntary oscillation of the

eyeballs[,]" and absent a "showing that experts in the field accept[ ] the premise that the substance in question, alcohol, caused exaggeration of eye twitches[,]" the evidence is inadmissible as substantive proof of guilt. **See Commonwealth v. Weaver**, 76 A.3d 562, 566-67 (Pa.Super. 2013), *affirmed*, 629 Pa. 313, 105 A.3d 656 (2014) (*per curiam* order).

However, assuming, *arguendo*, Appellant is correct that the trial court improperly permitted Trooper Laurendeau to testify concerning the results of the HGN test, we conclude the Commonwealth has met its burden of proving the error did not contribute to the verdict, and, thus, constituted harmless error.

In the case *sub judice*, the trial court judge specifically stated in its opinion that the court "sitting as fact-finder, did not consider the results of the HGN test in reaching its verdict." Trial Court Opinion, filed 4/25/17, at 5. Thus, as the Commonwealth argues, there is no indication that the admittance of Trooper Laurendeau's testimony concerning the HGN test prejudiced Appellant or, alternatively, any prejudice suffered by Appellant was *de minimis*. **See Robinson**, **supra**. Appellant, nevertheless, speculates that the trial court did, in fact, consider the HGN test results in rendering its verdict. However, we decline to delve further into this issue based solely on Appellant's speculation and conjecture.

Moreover, we conclude that any error in the admittance of the HGN test results was harmless because the uncontradicted evidence of guilt was so

overwhelming that any "prejudicial effect of the [possible] error was so insignificant by comparison that [it] could not have contributed to the verdict."

*Robinson*, ___ Pa. at ___, 721 A.2d at 350.

Section 3802(a)(1) of the Vehicle Code provides:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1).

In order to convict a defendant of DUI—general impairment, "the Commonwealth [must] prove the following elements: the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol." *Commonwealth v. Segida*, 604 Pa. 103, 985 A.2d 871, 879 (2009). With regard to the second element, our Supreme Court has stated:

The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply. . . .The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1)

remains on the inability of the individual to drive safely due to consumption of alcohol-not on a particular blood alcohol level.

*Id.*

Here, the record shows that Appellant engaged in unsafe driving when, over the course of a mile, he "cross[ed] not only out of [his] lane of travel into other adjacent lanes without using the changing lane signal, but also over into the shoulder[,]" several times.  N.T., 2/1/17, at 6-7.  Further, in exiting I-95, he crossed over the white lines that form a "V" between the highway and exit ramp.  *Id.*  Evidence of his intoxication at this time was demonstrated by the "heavy" smell of alcohol emanating from his vehicle, body, and breath, as well as his dilated, glassy pupils.   This evidence, as the trial court noted based on Trooper Laurendeau's testimony, constituted "clear indicators of alcohol impairment."  Trial Court Opinion, filed 4/25/17, at 5.  ***See Segida***, ***supra***.  Further, although he had no visible ankle injury, Appellant reported to the trooper that he could not perform certain field sobriety tests, including the one-legged stand and the walk and turn, due to an ankle injury.

Based on the aforementioned, even absent the evidence concerning the HGN test results, the Commonwealth's evidence overwhelmingly showed that Appellant was under the influence of alcohol to a degree that rendered him incapable of safe driving at the time Trooper Laurendeau stopped his vehicle.

*See id.* Thus, given this overwhelming evidence, any error in the trial court's admittance of the HGN test results was harmless.[4]

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/2018

_____

[4] We note that Appellant argues on appeal that the evidence was insufficient to sustain his conviction for DUI under Section 3802(a)(1). However, in consideration of the overwhelming evidence of guilt, even absent the HGN test results, we find no merit to Appellant's sufficiency of the evidence claim. *See Commonwealth v. Brooks*, 7 A.3d 852, 856-57 (Pa.Super. 2010) (setting forth our standard of review in sufficiency of the evidence claims).