J-S08040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JULIAN ANTHONY JORDAN | : | |
| | : | |
| Appellant | : | No. 928 MDA 2021 |

Appeal from the Judgment of Sentence Entered February 24, 2021
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000382-2020

BEFORE:  BOWES, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED: MAY 12, 2022**

Julian Anthony Jordan (Appellant) appeals from the judgment of sentence imposed in the Lebanon County Court of Common Pleas, following his non-jury conviction of driving under the influence of controlled substances (DUI), possession of a small amount of marijuana, and failing to drive at a safe speed.[1]  He argues the trial court erred when the court (1) determined Appellant's supplemental post-sentence motion was untimely filed, and (2) refused to consider Appellant's challenge to the ineffective assistance of trial counsel on direct appeal pursuant to ***Commonwealth v. Holmes***, 79 A.3d 562 (Pa. 2013).  For the reasons below, we affirm.

---

[1] 75 Pa.C.S. § 3802(d)(2), 35 P.S. § 780-113(a)(31), and 75 Pa.C.S. § 3361, respectively.

On November 27, 2019, at approximately 12:36 a.m., Appellant was driving a white Scion vehicle in Lebanon, Pennsylvania, when he was stopped for failing to drive at a safe speed. He was subsequently arrested for DUI and possession of a small amount of marijuana. The case proceeded to a non-jury trial conducted on January 11, 2021. The relevant facts presented during Appellant's bench trial, as summarized by the trial court, are as follows:

> On November 27, 2019, Sergeant Steven Bord (hereafter [Sergeant] Bord) of the Lebanon City Police responded to a call by Patrolman Andrew Harner (hereafter Officer Harner) regarding a White Scion vehicle moving "incredibly fast" north on Lincoln Avenue in the City of Lebanon. [Sergeant Bord] intercepted the vehicle at the intersection of Seventh and Mifflin Streets. [He] and [Officer Harner] approached the Scion[.]
>
> The window of the Scion was down and [Sergeant Bord] smelled the odor of burnt marijuana coming from the vehicle. [Sergeant Bord] saw [Appellant] and observed that his eyes "were red, bloodshot and the rims were really red and he had slow speech. [Appellant's] speech was long and drawn out. . . . His motions and movements were slow, dream like." No one else was in the vehicle with [Appellant].
>
> [Sergeant Bord] observed "green vegetable material" in the recess of the door handle. Based upon his 35 years as a police officer, [Sergeant Bord] identified this material as looking exactly like marijuana. Additional green vegetable material was found in a small tin [located between the seat and center console[2]] inside the vehicle. [The vehicle was registered to Appellant.]
>
> *    *    *
>
> The Commonwealth entered a Stipulation . . . that the leafy green substance . . . was sent to the Pennsylvania State Police

_____

[2] N.T. Bench Trial, 1/11/21, at 12.

- 2 -

Harrisburg Regional Laboratory for analysis[, and] revealed . . . to be marijuana, a Schedule I controlled substance.

[Sergeant Bord] indicated that the smell of burnt marijuana was observed emanating from [Appellant] and the white Scion. [He] relied upon his 35 years [as] a police officer, including training and his experience on the Drug Task Force and seven (7) years as a Forensic Detective, to substantiate his ability to identify the smell of burnt marijuana and the physical effects smoking marijuana has on a person. Through his observations of the materials found in the vehicle and the actions of [Appellant] on November 27, 2019, [Sergeant Bord] opined that [Appellant] was under the influence of marijuana[,] exhibited "all the signs of complete THC impairment[,]" and . . . was incapable of driving safely.

[Officer] Harner has been a police officer for 27 years[, and] has extensive training and experience in the detection of impaired drivers. This training extends to all substances that can impair someone's ability.

On November 27, 2019, [Officer Harner] observed the white Scion vehicle travelling at a high rate of speed north on Lincoln Avenue. [He] pursued the vehicle, estimating its speed to be 50-60 miles per hour. He could not catch up with the vehicle. [Officer Harner] did not pursue the white Scion at the same speed because the area is a residential neighborhood; [he] did not want to risk endangering residents of the area. [The officer] radioed the situation to other Lebanon City Police in the vicinity in order to obtain assistance in intercepting and stopping the white Scion.

The traffic stop of [Appellant] was recorded by the deck camera in [Officer Harner's] patrol car. Recording commenced at the activation of [the officer's] lights and sirens. The recording[, which was played for the trial court,] shows [Officer Harner's] pursuit of the white Scion beginning on Canal Street through when the vehicle [was] stopped at 500 North Seventh Street, the corner of Mifflin and Seventh [S]treets. Video recording continued through the entire incident including search of the vehicle, talking with [Appellant] and field sobriety testing.

[Officer Harner] requested [Appellant] to put the vehicle in park and to open the window. [Appellant] was the sole occupant of the [vehicle. Officer Harner] observed that [Appellant] was "very slow with his actions." . . . Based on [Officer Harner's] training and experience, he determined that the odor emitting

from the vehicle was "recently burnt" marijuana. [The officer] suspected impairment based on odor and motor skills and his observation that [Appellant's] eyes were "red and they were glassed over." Based on his training and experience, as well as "the totality of the circumstances . . . [Appellant's] skill level that he had with comprehending and his mental and physical capabilities", [Officer Harner] placed [Appellant] under arrest for driving under the influence of marijuana. [The officer] did not perform field sobriety testing at that time because he believed that the totality of the circumstances warranted placing [Appellant] under arrest.

[Officer Harner] placed [Appellant] in the backseat of his patrol car in order to transport [him] to the [h]ospital for a blood test. This transport was visually and audio recorded. [Officer Harner] testified that the video showed [Appellant] to have signs of impairment. "He was very incoherent. His eyes were closed."

Upon arrival at [the hospital], [Officer Harner] asked [Appellant] if he would perform sobriety tests. [Appellant] agreed. [Officer Harner] explained and demonstrated the tests to [Appellant] and conducted the "walk-and-turn" and the "one-leg stand divided attention" tests on [Appellant]. [Appellant's] performance of the sobriety tests was recorded on dash-cam video. [Officer Harner] testified that [Appellant] exceeded the number of validated clues needed for [the officer] to reach a decision point on [Appellant's] impairment. Combined with the totality of the circumstances, including experience and training, [Officer Harner] felt that [Appellant] should not be operating a motor vehicle.

[Officer Harner then] requested that [Appellant] have a blood test performed. [The officer] read the . . . Implied Consent [form] to [Appellant]. [Appellant] refused the blood test multiple times. . . . Notwithstanding this refusal, [Officer Harner] confirmed that he believed [Appellant] to be so impaired that he was rendered incapable of safely driving.

Trial Ct. Op., 6/16/21, at 2-6 (record citations omitted).

At the conclusion of the bench trial, the court found Appellant guilty of all charges. In announcing its verdict, the court commented:

> [T]he only thing that is giving me pause is the field sobriety tests. I actually think that [Appellant] did fairly well on the field sobriety test, surprisingly well given everything else that I saw. Had it not been for the field sobriety tests, I would have had no pause at all. The manner in which [Appellant] drove, the manner in which [he] blew through a stop sign at a very [perilous] intersection. The manner he was described to be after police encountered him, and the manner which I observed him in the back seat of the [police] vehicle. They all screamed to me that [Appellant] should not be behind the wheel of a car.
>
> What puts me over the top is the refusal. I'm permitted to consider an individual's refusal as evidence of his own consciousness of guilt. In this case, that is what puts me over the top. . . .

N.T., Bench Trial, at 69-70. On December 24, 2021, the trial court sentenced Appellant to a term of 72 hours' to six months' imprisonment for DUI, a $25 fine and concurrent 30 days' probation for possession of marijuana, and a $25 fine for the summary driving offense.

Still represented by trial counsel — Assistant Public Defender Dalia A. Aboraya, Esquire — Appellant filed a timely post-sentence motion on March 8, 2021, challenging the weight and sufficiency of the evidence supporting his DUI conviction. Before the trial court ruled on the motion, on April 9, 2021, new counsel — John T. Fegley, Esquire — entered his appearance for Appellant. That same day, Attorney Fegley filed a "Supplemental Post-Sentence Motion" without first obtaining leave of court. The supplemental motion presented two claims alleging the ineffective assistance of trial counsel: (1) counsel failed to seek suppression of the evidence obtained during a warrantless search of Appellant's vehicle in violation of *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020), and (2) counsel

- 5 -

failed to "elicit evidence of [Appellant's] physical performance" during the Horizontal Gaze Nystagmus (HGN) field sobriety test. Appellant's Supplemental Post-Sentence Motion, 4/9/21, at 3-5 (unpaginated). Appellant further asserted that the trial court had the authority to consider these ineffectiveness claims on direct appeal pursuant to *Holmes*, because (1) his short sentence would "likely" deny him the opportunity to bring these claims on collateral review and (2) "[i]f granted a hearing . . ., [he was] prepared to expressly waive his right to subsequently review under the" Post Conviction Relief Act (PCRA).[3] *Id.* at 2-3 (unpaginated).

On April 15, 2021, the trial court entered an order directing the Commonwealth to file a written response to Appellant's supplemental post-sentence motion. Order, 4/15/21, at 1. The Court noted that after review, it would "render a decision with respect to whether a hearing regarding trial counsel's ineffectiveness can be conducted as part of the Post-Sentence Process." *Id.* at 1-2.

On April 27, 2021, Appellant filed a brief in support of his original and supplemental post-sentence motions.[4] On April 30th, the Commonwealth filed a brief in opposition to the supplemental post-sentence motion, asserting

_____

[3] 42 Pa.C.S. §§ 9541-9546.

[4] In that motion, he withdrew his prior claim that the evidence was insufficient to support his conviction of DUI. *See* Appellant's Brief in Support of Post-Sentence Motion and Hearing on Supplemental Post-Sentence Motion, 4/27/21, at 8.

Appellant's request for relief did not meet either of the **Holmes** exceptions, permitting the resolution of ineffectiveness claims on direct appeal. **See** Commonwealth's Brief in Opposition to [Appellant's] Supplemental Post-Sentence Motion, 4/30/21, at 4 (unpaginated).

On May 7, 2021, the trial court entered an order denying Appellant's request for a hearing on his Supplemental Post-Sentence Motion. **See** Order, 5/7/21. The court found Appellant's supplemental motion was untimely filed, and, therefore, Appellant failed to demonstrate "good cause" for the court to consider his ineffectiveness claims prior to PCRA review. **See id.** at 3. Subsequently, on June 16, 2021, the court entered an order and opinion denying Appellant's original post-sentence motion. Order, 6/16/21. This timely appeal follows.[5]

Appellant raises two issues on appeal, both of which challenge the trial court's denial of relief on his supplemental post-sentence motion:

1. Did the trial court err in finding that [Appellant's] Supplemental Post-Sentence Motion was untimely despite Pa.R.Crim.P. 720(B)(1)(b) specifically authorizing supplemental post-sentence motions?

_____

[5] We note the court mistakenly sent its June 16th order to trial counsel, and not Attorney Fegley. Thus, it filed an amended order the next day, June 17th, which it mailed to Attorney Fegley.

Later, Appellant timely complied with the trial court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The concise statement does not include either of the claims addressed in Appellant's original post-sentence motion.

2. Did the trial court err in finding that the dictates of [***Holmes***], for trial courts to liberally allow the unitary review of ineffective assistance of counsel claims in cases involving short sentences, did not apply to that matter at hand where [Appellant] was sentenced to a maximum term of 6 months?

Appellant's Brief at 4.

In his first issue, Appellant contends the trial court erred when it determined his supplemental post-sentence motion was untimely filed. "[T]o the extent that this [claim] presents an issue of interpretation of the relevant rules of criminal procedure . . . our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Libengood***, 152 A.3d 1057, 1059 (Pa. Super. 2016) (citation and quotation marks omitted).

It is axiomatic that an appeal in a criminal case must be filed within 30 days of the imposition of sentence. ***Commonwealth v. Dreves***, 839 A.2d 1122, 1126 (Pa. Super. 2003) (*en banc*). In order to toll the 30-day appeal period, a defendant must file a post-sentence motion "no later than 10 days after imposition of sentence." Pa.R.Crim.P. 720(A)(1). Once a timely post-sentence motion is filed, the trial court must decide the motion within 120 days, or it is denied by operation of law.[6] ***See*** Pa.R.Crim.P. 720(B)(3)(a).

However, the Rule also permits the filing of a **supplemental** post-sentence motion under certain circumstances. Rule 720(B)(1)(b) provides:

> The defendant may file a supplemental post-sentence motion **in the judge's discretion** as long as the decision on the

---

[6] Paragraph (B)(3)(b) permits the trial court, "for good cause shown," to grant one 30-day extension of the 120-day decision period. Pa.R.Crim.P. 720(B)(3)(b).

> supplemental motion can be made in compliance with the time limits of paragraph (B)(3).

Pa.R.Crim. P. 720(B)(1)(b) (emphasis added). Thus, a defendant may seek permission from the trial court to file a supplemental post-sentence motion, so long as the court can decide the motion within the 120-day period set forth in paragraph (B)(3)(b).[7] Furthermore, the courts of this Commonwealth also recognize the authority of a trial court to permit a defendant to file an untimely post-sentence motion *nunc pro tunc*, so long as the defendant files the motion "within 30 days after the imposition of sentence [and] demonstrate[s] sufficient cause[ to] excuse the late filing." ***Dreves***, 839 A.2d at 1128 (emphasis and footnote omitted).

In the present case, Appellant filed a timely post-sentence motion within the requisite 10-day period. However, before the trial court ruled on that motion — and 44 days after sentencing — new counsel entered their appearance and filed a supplemental post-sentence motion seeking unitary review of ineffectiveness claims on direct appeal due to Appellant's short sentence. The trial court denied the supplemental motion as untimely filed, noting it was filed more than 30 days after the sentence was imposed. The court explained that "claims for unitary review [of ineffectiveness challenges] are extraordinary [and] time-sensitive." Trial Ct. Op., 7/28/21, at 5. Thus, the trial court concluded "it [was] not appropriate to grant unitary review via an untimely request for Post-Sentence Relief." ***Id.***

---

[7] As noted ***supra***, the trial court may grant an additional 30-day extension for "good cause shown." Pa.R.Crim.P. 720(B)(3)(b).

On appeal, Appellant challenges the trial court's ruling that his **supplemental** post-sentence motion was untimely filed. We agree that the court's characterization of the motion as "untimely" was incorrect. Indeed, the motion at issue was a "supplemental" motion — Appellant had filed a timely post-sentence motion on March 8, 2021, within 10 days of the imposition of sentence on February 24th.[8] Thus, pursuant to Rule 720(B)(1)(b), Appellant could file a supplemental motion so long as it could be decided within the 120-day period set forth in paragraph (B)(3)(a) — or, in this case, by July 6, 2021.[9] Appellant's supplemental motion, filed on April 9th, could have been decided during the requisite time period.

Nevertheless, we still conclude Appellant is entitled to no relief. Rule 720(B)(1)(b) permits a defendant to file a supplemental motion **only** "in the judge's discretion." Pa.R.Crim.P. 720(B)(1)(b). Here, Appellant did not request permission to file the supplemental motion in either a separate petition, or in the motion itself. Rule 720 does not permit Appellant to file a

---

[8] The tenth day following sentencing was Saturday, March 6, 2021. Therefore, Appellant had until Monday, March 8th, to file a timely post-sentence motion. **See** 1 Pa.C.S. § 1908.

[9] Rule 720(B)(3)(a) states that the 120-day period runs from "the filing of the motion[,]" not from the imposition of sentence. Pa.R.Crim.P. 720(B)(3)(a).

- 10 -

supplemental post-sentence motion absent leave of court. Thus, no relief is warranted.[10]

_____

[10] We recognize that the short term of Appellant's sentence renders relief pursuant to the Post Conviction Relief Act (PCRA) impossible. ***See*** 42 Pa.C.S. § 9543(a)(1)(i) ("To be eligible for [post-conviction collateral relief], the petitioner must plead and prove . . . [that] at the time relief is granted [he is] currently serving a sentence of imprisonment, probation or parole for the crime[.]"). However, under the ***Holmes*** exception directed toward these types of "short sentence" cases, "the unitary review [must be] preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA." ***Holmes***, 79 A.3d at 564. Here, Appellant did not **expressly** waive his right to collateral review in his supplemental motion, or attach a separate affidavit, but rather stated — contingently — that "[i]f granted a hearing on his claims[, he was] prepared to expressly waive his right to subsequent review under the PCRA[.]" Appellant's Supplemental Post-Sentence Motion at 3 (unpaginated). This is insufficient under ***Holmes***.

Furthermore, Appellant's proposed ineffectiveness claims fall short. With regard to trial counsel's failure to seek suppression of the tin of marijuana under ***Alexander***, we note that even if that evidence was suppressed, Appellant does not challenge Sergeant Bord's authority to seize the marijuana — in plain view — located in the recess of the door handle. That evidence also was sufficient to support Appellant's conviction of possession of a small amount of marijuana.

Moreover, with regard to counsel's failure to elicit evidence of the HGN test, Appellant acknowledges that testimony concerning his "involuntary eye movements during the HGN" test, has been "deemed scientific evidence[,]" and is, thus, inadmissible absent an adequate scientific foundation. Appellant's Supplemental Post-Sentence Motion at 4-5 (unpaginated); ***Commonwealth v. Stringer***, 678 A.2d 1200, 1201 (Pa. Super. 1996). However, he asserts that trial counsel should have elicited evidence concerning his "physical performance" during the test, without reference to his eye movements. ***See*** Appellant's Supplemental Post-Sentence Motion at 5 (unpaginated). Our review of the record reveals no mention of the HGN test in the probable cause affidavit or at trial. Thus, the record does not support his assertion that he was required to perform the HGN test prior to his arrest. *(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judge Bowes Concurs in the Result.

Judge Nichols Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/12/2022

---

Accordingly, even if we considered Appellant's ineffectiveness claims, he would be entitled to no relief.